Robyn KENYON

v.

Albert HANDAL.

Court of Appeals of Tennessee,
at Nashville.

Jan. 4, 2001 Session.

March 10, 2003.

Permission to Appeal Denied by
Supreme Court Oct. 6, 2003.

E. Covington Johnston, Jr. and J. Timothy Street, Franklin, Tennessee, for the appellant, Robyn Kenyon.

Phillip North, Michael F. Jameson, and M. Todd Sandahl, Nashville, Tennessee, for the appellee, Albert Handal.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

This appeal involves a medical malpractice action. After her baby was delivered stillborn, a patient filed suit in the Circuit Court for Sumner County against her obstetrician and the hospital, alleging that their negligent supervision of her labor after she arrived at the hospital caused the death of her baby. Both the obstetrician and the hospital filed properly supported motions for summary judgment. The trial court granted the motions after determining that the affidavit by the patient's medical expert had not been timely filed and did not comply with Tenn.Code Ann. § 29–26–115(a)(1), (b) (Supp.2002). The patient filed a Tenn. R. Civ. P. 59.04 motion limited to the dismissal of her claim against the obstetrician. She supported the motion with the revised affidavit by her medical expert and her lawyer's affidavit explaining his efforts to comply with Tenn. R. Civ. P. 56. The trial court denied the patient's motion. On this appeal, the patient asserts that the trial court should have excused her tardy response to the obstetrician's summary judgment motion and that her medical expert's revised affidavit satisfies Tenn.Code Ann. § 29–26–115(a)(1), (b). We have determined that the trial court should have excused the patient from Tenn. R. Civ. P. 56.04's deadline for serving and filing opposing affidavits. However, we have also determined that the affidavits of the patient's medical expert do not satisfy Tenn.Code Ann. § 29–26–115(a)(1). Accordingly, we affirm the summary judgment dismissing the patient's complaint against her obstetrician.

## I.

In July 1997, Robyn Kenyon, then twenty years old and pregnant with her first child, placed herself in the care of Dr. Albert Handal, a physician specializing in obstetrics and gynecology who practices in Sumner County. As her pregnancy progressed, Ms. Kenyon visited Dr. Handal approximately once each month to enable him to monitor her condition and to provide her with prenatal care instructions.

Ms. Kenyon's due date was apparently in early to mid-January 1998. On January 5, 1998, she contacted Dr. Handal because she was experiencing contractions. Dr. Handal instructed her to go to the emergency room at Sumner Regional Medical Center where he determined that her condition was not favorable for an induced delivery. After determining that there were no indications of fetal compromise, Dr. Handal instructed Ms. Kenyon to come to his office on the following day. According to Ms. Kenyon, Dr. Handal also told her that he intended either to induce labor or perform a caesarean section if her baby was not born by January 13, 1998. Dr. Handal examined Ms. Kenyon again on January 6, 1998 and determined that the fetus was active and had normal heart tones. He also determined that her condition remained unfavorable for an induced delivery.

On January 9, 1998, Ms. Kenyon returned to the emergency room at Sumner Regional Medical Center complaining of contractions and diarrhea. She was admitted to the labor and delivery department at approximately 8:30 a.m. She was placed on a fetal monitor, and the monitor indicated fetal heart tones in the range of 175–180 beats per minute which indicated mild tachycardia. The hospital staff reported their findings by telephone to Dr. Handal at approximately 9:05 a.m. Dr. Handal was not scheduled to be at the hospital at that time, and so he ordered supportive therapy to address the fetus's high heart rate.[1]

---

1. This therapy included administering IV fluids and oxygen to Ms. Kenyon and placing her on her side.

The hospital staff telephoned Dr. Handal again at 9:30 a.m. to inform him that the fetus's tachycardia had not abated. Dr. Handal then ordered a biophysical profile to determine the cause of the fetal tachycardia as well as the necessary treatment for the condition. An ultrasound technician arrived to perform the biophysical profile at approximately 10:00 a.m., and Ms. Kenyon was disconnected from the fetal monitor at approximately 10:03 a.m. to enable the test to be performed.

Dr. Handal arrived at the hospital at approximately 10:40 a.m., just after the biophysical profile had been completed. No fetal heart tones were detected after Ms. Kenyon was reconnected to the fetal monitor at approximately 10:48 a.m. Dr. Handal performed a pelvic ultrasound and confirmed the absence of fetal movement or heart tones. Dr. Handal performed a second pelvic ultrasound as Ms. Kenyon was being prepared for an emergency caesarian section. When he found no fetal heart movement, he cancelled the procedure and pronounced the fetus dead. Later in the afternoon, Dr. Handal induced delivery, and the fetus was stillborn at approximately 7:50 p.m. Upon delivery, it appeared that the fetus had died from an unpredictable kink in the umbilical cord under the fetus's chin. Ms. Kenyon was discharged from the hospital on January 10, 1998.

On January 11, 1999, Ms. Kenyon filed a medical malpractice action in the Circuit Court for Sumner County against Dr. Handal and the Sumner Regional Medical Center.[2] On January 14, 2000, the Sumner Regional Medical Center filed a motion for summary judgment. Dr. Handal's motion for summary judgment followed four days later on January 18, 2000. The trial court heard both motions on February 25, 2000. Neither Ms. Kenyon nor Dr. Handal opposed the hospital's motion, and the trial court dismissed Ms. Kenyon's complaint against the hospital with prejudice.

The trial court took Dr. Handal's motion for summary judgment under advisement and on March 8, 2000, filed an order granting him a summary judgment on three grounds. First, the trial court concluded that Ms. Kenyon's response and affidavit opposing Dr. Handal's motion had not been timely and that she had failed to provide good cause for excusing her from the filing deadlines. Second, the trial court determined that the affidavit of Ms. Kenyon's medical expert failed to comply with Tenn.Code Ann. § 29–26–115(b) because the medical expert failed to state that he was licensed in the State of Georgia "during the year preceding the date of the alleged injury or wrongful act." Third, the trial court determined that the medical expert's affidavit failed to state the basis for his knowledge of the standard of care that Dr. Handal allegedly violated as required by Tenn.Code Ann. § 29–26–115(a)(1).

On April 7, 2000, Ms. Kenyon filed a Tenn. R. Civ. P. 59.04 motion requesting the trial court to alter or amend its March 8, 2000 order. Attached to this motion was a revised affidavit by her medical expert as well as an affidavit by Ms. Kenyon's lawyer explaining why he had failed to file his opposing affidavit until the day before the hearing. The trial court conducted a hearing on this motion on May 5, 2000 and, on May 12, 2000, filed an order denying the motion. The trial court specifically determined that the affidavits sub-

---

**2.** This action was timely because the one-year statute of limitations expired on Saturday.

mitted with Ms. Kenyon's Tenn. R. Civ. P. 59.04 motion did not justify granting relief.

## II.

### THE TIMELINESS OF MS. KENYON'S RESPONSE TO DR. HANDAL'S MOTION FOR SUMMARY JUDGMENT

We turn first to Ms. Kenyon's claim that the trial court erred by failing to excuse her from complying with Tenn. R. Civ. P. 56.04's deadline for filing a response and opposing affidavits to a summary judgment motion. As we understand Ms. Kenyon's brief, she offers three arguments to support this claim. First, she asserts that she complied with Tenn. R. Civ. P. 56.04's deadline by providing opposing counsel with an unsigned draft copy of her medical expert's affidavit on February 18, 2000. Second, she argues that her lawyer was somehow induced to miss the deadline by Dr. Handal's lawyer. Third, she argues that her failure to comply with Tenn. R. Civ. P. 56.04 does not matter because she attached a revised version of her medical expert's affidavit to her Tenn. R. Civ. P. 59.04 motion. We will address Ms. Kenyon's first two arguments here and her third argument in Section IV. We have determined that the trial court based its decision on an incorrect standard and, therefore, that the trial court erred by failing to "waive" Tenn. R. Civ. P. 56.04's deadline for filing the opposing affidavit of Ms. Kenyon's medical expert.

### A.

This case is a quintessential example of the perils that befall a plaintiff who files a medical malpractice action without first engaging a testifying expert. After Ms. Kenyon filed her complaint in January

1999, the case essentially languished for thirteen months. The case's first significant procedural developments occurred on January 14 and 18, 2000, when Sumner Regional Medical Center and Dr. Handal filed their respective summary judgment motions. The events following these motions speak for themselves.

Both motions for summary judgment were originally set for hearing on Friday, February 18, 2000.[3] On February 9, 2000, one of Ms. Kenyon's lawyers, E. Covington Johnston, asked the lawyers representing Dr. Handal and the hospital to accommodate him by postponing the hearing until Friday, February 25, 2000. They agreed. While the record does not reveal Mr. Johnston's reasons for requesting this continuance, it is not unreasonable to presume that he needed more time to obtain affidavits to oppose the pending summary judgment motions.

At 4:18 p.m. on February 18, 2000, Mr. Johnston sent a facsimile to Thomas W. Shumate, IV, one of the lawyers representing Dr. Handal. Attached to this facsimile was a copy of Ms. Kenyon's response to Dr. Handal's summary judgment motion and an unsigned copy of a draft affidavit by Dr. Surender V. Kumar, a Georgia physician specializing in obstetrics and gynecology. Dr. Kumar's draft affidavit contradicted Dr. Handal's opinion that his care and treatment of Ms. Kenyon and her baby on January 9, 1998 had not been negligent.

After reading Dr. Kumar's draft affidavit, Mr. Shumate telephoned Mr. Johnston to inquire whether he would object to striking Dr. Handal's pending summary judgment motion. When Mr. Johnston indicated that he would not object, Mr. Shu-

---

**3.** Tenn. R. Civ. P. 56.04 requires that summary judgment motions be filed at least thirty days before the time fixed for the hearing.

mate told him that he would contact him early in the next week to confirm that the motion would be stricken. On February 22, 2000, Mr. Shumate sent a facsimile to Mr. Johnston informing him that he would strike Dr. Handal's summary judgment motion if he received a signed copy of Dr. Kumar's affidavit by 5:00 p.m. on Wednesday, February 23, 2000.

Mr. Johnston forwarded a signed copy of Dr. Kumar's affidavit to Mr. Shumate by facsimile on February 23, 2000. However, the signed affidavit differed materially from the draft affidavit Mr. Shumate had received on February 18, 2000. The most noticeable change was that the affidavit left blank the date on which Dr. Kumar was licensed to practice medicine in Georgia. After reviewing the revised affidavit, Mr. Shumate notified Mr. Johnston by facsimile that he would not strike his summary judgment motion and that it would be heard as scheduled on February 25, 2000.

Mr. Johnston sent a third version of Dr. Kumar's affidavit to Mr. Shumate on February 24, 2000. He filed a copy of this version with the trial court at 11:30 a.m. the same day. Mr. Shumate again responded by facsimile stating that he did not intend to strike the summary judgment motion set for hearing the following day. The trial court's March 8, 2000 order granting Dr. Handal's motion for summary judgment was predicated on its consideration of the third version of Dr. Kumar's affidavit.

## B.

■ Good trial judges set and enforce deadlines and also have the right to assume that the deadlines they set, as well as those imposed by the rules, will be honored. *Spears v. City of Indianapolis,* 74 F.3d 153, 157 (7th Cir.1996). Because trial courts enjoy substantial discretion to control the disposition of cases on their dockets, *Justice v. Sovran Bank,* 918 S.W.2d 428, 429–30 (Tenn.Ct.App.1995); *see also State v. Davis,* No. E1999–00373–CCA–R3–CD, 2000 WL 1349263, at *11 (Tenn.Crim.App. Sept. 19, 2000) (Tipton, J., dissenting) (No Tenn. R.App. P. 11 application filed), we customarily defer to their decisions regarding continuances, enlargements of time, or other relief from deadlines. *Sanjines v. Ortwein & Assocs., P.C.,* 984 S.W.2d 907, 909 (Tenn.1998) (continuance); *Douglas v. Estate of Robertson,* 876 S.W.2d 95, 97 (Tenn.1994) (enlargement of time); *State ex rel. Jones v. Looper,* 86 S.W.3d 189, 195–96 (Tenn.Ct.App. 2000) (enlargement of time). Accordingly, we will let the trial court's decision on these matters stand in the absence of clear prejudicial error under the circumstances of the case. *Trinity Indus. v. McKinnon Bridge Co.,* 77 S.W.3d 159, 175 (Tenn.Ct. App.2001).

### 1.

■ Ms. Kenyon's first argument is that Mr. Johnston complied with Tenn. R. Civ. P. 56.04's deadline by providing Mr. Shumate with an unsigned draft copy of Dr. Kumar's affidavit on February 18, 2000. This argument is flawed for three reasons, and we need not tarry long with it.

■ First, Ms. Kenyon's argument appears to be based on the assumption that the deadline for serving and filing affidavits opposing a motion for summary judgment is controlled by the local rules of court rather than by the Tennessee Rules of Civil Procedure. This assumption is mistaken as a matter of law. Both the Tennessee Rules of Civil Procedure and the Local Rules of the Eighteenth Judicial Circuit contain deadlines for filing affidavits opposing a motion for summary judgment. Tenn. R. Civ. P. 56.04 requires these affidavits, and presumably a response to a

motion, to be filed no later than five days before the hearing.[4] However, 18th Jud. Cir. R. 9.02 requires written responses to motions, including counter-affidavits and briefs, to be filed and served on the parties no later than seventy-two hours in advance of the hearing.

The Tennessee Rules of Civil Procedure have the force and effect of law. *State v. Hodges,* 815 S.W.2d 151, 155 (Tenn.1991); *Tennessee Dep't of Human Servs. v. Vaughn,* 595 S.W.2d 62, 63 (Tenn. 1980). Accordingly, local rules of practice cannot conflict with them. *In re Int'l Fidelity Ins. Co.,* 989 S.W.2d 726, 729 (Tenn. Crim.App.1998); *Pettus v. Hurst,* 882 S.W.2d 783, 786 (Tenn.Ct.App.1993). The 72–hour deadline in 18th Jud. Cir. R. 9.02 is unenforceable to the extent that it conflicts with the 5–day deadline in Tenn. R. Civ. P. 56.04. Therefore, the timeliness of Ms. Kenyon's response to Dr. Handal's summary judgment motion must be measured against Tenn. R. Civ. P. 56.04's deadline, not the deadline in 18th Jud. Cir. R. 9.02.

When the motions for summary judgment were first filed and set for hearing on February 18, 2000, the deadline for filing a response and opposing affidavits was February 11, 2000.[5] Mr. Johnston's February 9, 2000 telephone call requesting a postponement of the hearing reflects his realization that he could not meet this deadline. After opposing counsel agreed to reschedule the hearing for February 25, 2000, the deadline for filing Ms. Kenyon's response and opposing affidavits became February 18, 2000.

The second flaw in Ms. Kenyon's argument is that Dr. Kumar's unsigned draft affidavit is not an affidavit for the purpose of Tenn. R. Civ. P. 56.04.[6] The document, without a signature or oath, does not commit its purported author to any of the substantive statements it contains and, thus, has no evidentiary value. As such, it could not qualify as the sort of evidentiary material required by Tenn. R. Civ. P. 56.04 to create a genuine issue of material fact.

The third flaw in Ms. Kenyon's argument is that it overlooks that service of the affidavit on the opposing party alone is not sufficient. Tenn. R. Civ. P. 56.04 also requires that the affidavit be filed with the trial court. Mr. Johnston never attempted to file the unsigned draft of Dr. Kumar's affidavit. He waited until February 24, 2000 to file the revised affidavit that Dr. Kumar signed on February 22, 2000. Accordingly, the trial court was correct when it determined that Ms. Kenyon had failed to comply, even substantially, with Tenn. R. Civ. P. 56.04's deadline for filing opposing affidavits.

---

4. The five-day deadline in Tenn. R. Civ. P. 56.04 is an exception to Tenn. R. Civ. P. 6.04(2) that otherwise permits opposing affidavits to be served no later than one day before the hearing.

5. In accordance with Tenn. R. Civ. P. 6.01, the intermediate Saturday and Sunday are excluded from the calculation of time because the period of time prescribed by the rule is less than eleven days.

6. An affidavit is a written statement by an affiant that was made under oath. *Tennessee*

*Dep't of Human Servs. v. Neilson,* 771 S.W.2d 128, 130 (Tenn.Ct.App.1989). An unsigned document cannot qualify as an affidavit, *Crocker v. Larson,* No. 01A01–9002–CV–00083, 1990 WL 130087, at *4 (Tenn.Ct.App. Sept. 11, 1990) (No Tenn. R.App. P. 11 application filed), nor can a signed document that has not been notarized. *Boardwalk Regency Corp. v. Patterson,* No. M1999–02805–COA–R3–CV, 2001 WL 1613892, at *4 (Tenn.Ct. App. Dec. 18, 2001) (No Tenn. R.App. P. 11 application filed).

### 2.

■ Ms. Kenyon's second argument is that the trial court should have excused her failure to comply with Tenn. R. Civ. P. 56.04's filing deadline because Mr. Johnston was somehow misled by Mr. Shumate into believing that the deadline did not matter. We find little merit in this argument for two reasons. First, the record contains no evidence to support the claim that Mr. Shumate was responsible for Mr. Johnston's inability to file an opposing affidavit on or before February 18, 2000. Second, the argument overlooks an essential principle. Only trial courts may grant relief from deadlines imposed by the Tennessee Rules of Civil Procedure.

■ Lawyers who wait until the last minute to comply with a deadline are playing with fire. *Spears v. City of Indianapolis*, 74 F.3d at 157. Thus, reasonably prudent lawyers facing a deadline for obtaining and filing opposing affidavits needed to fend off an adversary's summary judgment motion have essentially three alternatives. First, they may see to it that the opposing affidavit is filed and served by the deadline. Second, they may request a continuance of the hearing from opposing counsel. Third, they may file a properly supported Tenn. R. Civ. P. 56.07 motion[7] requesting a continuance to enable them to obtain the needed affidavit.[8]

Nine days before the hearing, Mr. Johnston apparently did not have an affidavit to counter Dr. Handal's affidavit. Accordingly, he selected the second alternative and requested opposing counsel to continue the hearing on their motions for summary judgment for one week. By obtaining his opponent's agreement to continue the hearing, Mr. Johnston obtained another week to comply with Tenn. R. Civ. P. 56.04's deadline. During that week, he apparently secured Dr. Kumar's agreement to provide the needed affidavit, but then he realized that he would be unable to file and serve a signed copy of the affidavit on or before the extended deadline. Instead of requesting another continuance from opposing counsel or filing a Tenn. R. Civ. P. 56.07 motion, Mr. Johnston apparently decided to provide opposing counsel with an unsigned draft of Dr. Kumar's affidavit before the deadline and then to

7. Tenn. R. Civ. P. 56.07 is intended to serve as an additional safeguard against an improvident or premature grant of summary judgment. *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333 n. 5 (5th Cir.2002); *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir.1991). While it insures that a diligent party is given a reasonable opportunity to prepare its case, it is not invoked to aid parties who have been lazy or dilatory. 10B Charles A. Wright et al., Federal Practice and Procedure § 2741, at 412, 429–31 (3d ed. 1998) ("Federal Practice and Procedure"). Motions under Tenn. R. Civ. P. 56.07 must be accompanied by an affidavit explaining why the non-moving party has not been able to obtain and present the evidentiary material needed to oppose the summary judgment motion. The affidavit need not contain evidentiary facts going to the substantive merits of the case. Federal Practice and Procedure § 2740, at 397–98.

8. Experience tells us that other options exist, but reasonably prudent lawyers generally do not choose them. A lawyer could file the affidavit after the deadline but on or before the hearing and then hope that opposing counsel will not object. A lawyer could also file the affidavit after the deadline but before the hearing along with a Tenn. R. Civ. P. 6.02 motion requesting permission to file the affidavit late. This option entails risk. Because the affidavit and motion have been filed after the deadline, Tenn. R. Civ. P. 6.02 requires the lawyer to demonstrate that his or her failure to meet the deadline was the result of excusable neglect. Finally, a lawyer could theoretically not file the affidavit and show up at the hearing to request more time to obtain an affidavit. This particular tactic is generally unsuccessful if the lawyer seeking the extension has already had a reasonable opportunity to engage in discovery or to obtain the needed evidentiary materials.

file the signed affidavit with the trial court before the hearing.

This strategy almost worked. Mr. Shumate was prepared to strike his motion for summary judgment as long as Mr. Johnston provided him with a signed copy of Dr. Kumar's affidavit. It was at this point that Mr. Johnston's gambit got derailed. Dr. Kumar declined to sign the affidavit Mr. Johnston had drafted for him, and Mr. Johnston was required to hurriedly prepare another affidavit that would satisfy Dr. Kumar. He obtained Dr. Kumar's signature on the revised affidavit on February 22, 2000, and sent Mr. Shumate a copy of this affidavit by facsimile on February 23, 2000. When Mr. Shumate discovered that this affidavit differed from the earlier draft and that it was substantively deficient, he immediately informed Mr. Johnston that he intended to proceed with the hearing on his motion.

Mr. Johnston must have realized at this point that he was losing maneuvering room. With less than two days before the hearing, he had raised the hackles of his adversary by providing him with a signed affidavit that differed materially from the earlier draft. He also must have realized that the affidavit he had in hand was deficient. Accordingly, Mr. Johnston changed the substance of the affidavit Dr. Kumar had signed on February 22, 2000.[9] On February 24, 2000, he filed this altered

affidavit with the trial court and provided a copy to Mr. Shumate.

In this day and time, patients filing a medical malpractice case should reasonably anticipate that their claim will eventually be tested by a motion for summary judgment, particularly when discovery reveals a weakness in the qualifications of their expert or in their evidence regarding the applicable standard of care or causation. Accordingly, reasonable lawyers representing patients in medical malpractice cases generally retain qualified medical and causation experts and have a clear understanding regarding the substance of their testimony long before a motion for summary judgment is filed. This record demonstrates that the predicament in which Mr. Johnston found himself in February 2000 was caused by waiting until the eleventh hour to obtain an affidavit to oppose Dr. Handal's motion for summary judgment.

The factors relating to the reasons for Mr. Johnston's failure to file opposing affidavits on or before the February 18, 2000 deadline weigh heavily in favor of the trial court's decision that the delay in filing Dr. Kumar's affidavit was not the result of excusable neglect. The causes for the failure to meet the deadline were entirely within Mr. Johnston's control, and the circumstances indicate that he was not acting reasonably to meet the deadline. In addition, Mr. Johnston's efforts to avoid re-

9. Mr. Johnston did not obtain a new affidavit from Dr. Kumar but rather added language to the affidavit Dr. Kumar had already signed. While we presume that Mr. Johnston made these changes with Dr. Kumar's knowledge and consent, this opinion should not be construed as approving the practice of a lawyer altering a witness's affidavit after it has been signed. The new information was significant. The affidavit Dr. Kumar signed on February 22, 2000 contained a blank space for the date when he was first licensed to practice in Georgia. Either Mr. Johnston or someone at

his direction wrote in the date "1971" in this blank space. Secondly, Mr. Johnston added a sentence to paragraph eight of Dr. Kumar's affidavit regarding causation which had not been addressed in the earlier affidavits. The sentence read: "Had Dr. Handal not delayed his response to evaluate Robyn Kenyon, especially in the presence of non-reassuring fetal heart tones, he would have been able to save the life of Baby Girl Kenyon within a degree of medical certainty by performing an emergency C-section."

sponsibility for his own inattention by blaming his client's predicament on Mr. Shumate were, at best, disingenuous.

Mr. Johnston knew or should have known that the deadline for filing affidavits opposing Dr. Handal's motion for summary judgment was February 18, 2000. The best he could do was to send a response and an unsigned draft of Dr. Kumar's affidavit by facsimile to Mr. Shumate in hopes that these documents would be satisfactory. Mr. Johnston made no effort to file anything with the trial court before the close of business on February 18, 2000. Thus, Mr. Johnston had already failed to comply with Tenn. R. Civ. P. 56.04 by the time of his telephone conversation with Mr. Shumate on the afternoon of February 18, 2000. Nothing Mr. Shumate could have said during the telephone conversation can reasonably be construed as causing or inducing Mr. Johnston to miss the deadline he had already missed by the time he talked with Mr. Shumate.[10]

There is a second reason why Mr. Johnston cannot lay off any portion of his responsibility for complying with Tenn. R. Civ. P. 56.04's deadline on Mr. Shumate. The filing deadline did not exist solely for Mr. Shumate's benefit, although it is intended to enable lawyers to be fully prepared to present their arguments at the hearing on the summary judgment motion. The deadline also exists to enable the trial court to control its docket and to give the court sufficient opportunity to review the case file to be likewise fully prepared to rule on the motion. Accordingly, an opposing party's acquiescence does not, by itself, provide a sufficient basis for missing Tenn. R. Civ. P. 56.04's filing deadline. As Tenn. R. Civ. P. 6.02 makes clear, parties must obtain the court's permission to miss a filing deadline.

Mr. Johnston made no effort to obtain the trial court's permission to miss the February 18, 2000 deadline before it expired. It is clear that he was having problems finding an expert willing to testify that Dr. Handal had been negligent and that he knew by February 9, 2000 at the latest that it would be difficult for him to obtain and file an opposing affidavit in a timely manner. Filing a properly supported motion pursuant to Tenn. R. Civ. P. 56.07 would have been relatively easy to do. Accordingly, we find no factual basis for attributing Mr. Johnston's failure to request an enlargement of time for filing opposing affidavits to Mr. Shumate.

## C.

■ Even though Mr. Johnston filed an opposing affidavit before the hearing on Dr. Handal's motion for summary judgment, he missed Tenn. R. Civ. P. 56.04's deadline for filing this affidavit by six days. Accordingly, he should have filed a Tenn. R. Civ. P. 6.02 motion seeking an enlargement of time and permission to file the affidavit late. Mr. Johnston failed to file this motion. When Mr. Shumate objected to the late-filed affidavit, the trial court used what it called the "excusable neglect" standard to determine whether it would "waive" Tenn. R. Civ. P. 56.04's deadline and declined to waive the dead-

10. Mr. Johnston has not argued that he would have been able to file and serve an affidavit signed by Dr. Kumar before the close of business on Friday, February 18, 2000, had Mr. Shumate insisted on timely compliance with Tenn. R. Civ. P. 56.04 during their telephone conversation. The record demonstrates that it would have been impossible for him to file Dr. Kumar's signed affidavit on February 18, 2000. Dr. Kumar declined to sign the first draft affidavit Mr. Johnston prepared for him—the unsigned draft provided to Mr. Shumate on February 18, 2000. Further revisions were required, and Dr. Kumar did not sign his affidavit until February 22, 2000.

line solely because of Mr. Johnston's failure to prosecute Ms. Kenyon's case.[11] The trial court should have employed the standards in Tenn. R. Civ. P. 6.02 to determine whether Ms. Kenyon was entitled to an enlargement of time. Accordingly, we will employ them now.

Tenn. R. Civ. P. 6.02 distinguishes between requests for enlargement made before the expiration of the specified time period and those made after the original time period has elapsed. If the request is made after the original time has elapsed, the party requesting the enlargement must demonstrate that its failure to meet the deadline was due to excusable neglect and that the opposing party has not been prejudiced by the delay. *Douglas v. Estate of Robertson*, 876 S.W.2d at 97; *Wagner v. Frazier*, 712 S.W.2d 109, 113 (Tenn. Ct.App.1986).

The concept of excusable neglect is broad enough to apply to "simple, faultless omissions to act and, more commonly, [to] omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). Accordingly, the concept of excusable neglect can be used to excuse a failure to comply with a filing deadline that is attributable to a filer's negligence. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 394, 113 S.Ct. at 1497; *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir.1996). However, not all negligent acts should be considered excusable.

We have described the process for determining whether a failure to meet a deadline has been caused by excusable neglect as follows:

> Finding whether neglect is excusable is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." The relevant circumstances envelop the big picture of both causes and effects, including (1) the danger of prejudice to the party opposing the late filing, (2) the length of the delay and its potential impact on proceedings, (3) the reason why the filing was late and whether that reason or reasons were within the filer's reasonable control, and (4) the filer's good or bad faith. These circumstances must be weighed both with and against each other because, if considered separately, they may not all point in the same direction in a particular case.

*State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d 557, 567 (Tenn.Ct.App.2001) (citations omitted). We have also held that the party's reason for failing to meet the deadline may be the single most important of the four factors and that the trial court should examine the proffered reason to determine "(1) whether the circumstances involved were under a party's own control ... and (2) whether the party was paying appropriate attention to the matter in light

---

**11.** In its March 8, 2000 order, the trial court stated:

> The Court is mindful of Tennessee Rules of Civil Procedure, Rule 11.02, which requires counsel for the Plaintiff to make factual contentions and to have evidentiary support for those contentions at the time of their filing. The events underlying this *medical* malpractice action occurred on January 9, 1998, and over one year later on January 11, 1999, counsel for the Plaintiff

filed the Complaint which initiated this action. During the subsequent thirteen months, Plaintiff's counsel made virtually no effort to prosecute the action and failed to respond to the Motion for Summary Judgment filed on January 14, 2000 until February 24, 2000. Thus, the Court specifically finds that counsel for the Plaintiff has failed to reveal any basis upon which the Court should waive the requirements of both the local rules, as well as, Rule 56.04.

of the surrounding circumstances." *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group,* 56 S.W.3d at 569–70. Thus, granting relief from filing deadlines under Tenn. R. Civ. P. 6.02 has been characterized as "repair work when lawyers have good reasons." *Day v. Northern Ind. Pub. Serv. Corp.,* 164 F.3d 382, 384 (7th Cir.1999).

There is much to criticize about Mr. Johnston's tactics after Dr. Handal and the hospital filed their motions for summary judgment in January 2000. Indeed, as the trial court found, he has offered no good reasons for his inability to file and serve Dr. Kumar's affidavit on or before February 18, 2000. However, Tenn. R. Civ. P. 6.02 requires us to consider that factor along with (1) the prejudice to Dr. Handal, (2) the length of the delay, (3) the delay's impact on the proceedings, and (4) Mr. Johnston's good faith.

■ We do not find that he was acting in bad faith. Even though he may not have been prosecuting Ms. Kenyon's case with much vigor, there is no indication in the record that Mr. Johnston had missed other deadlines or that he had requested other extensions of time. By the time of the hearing, Mr. Johnston had actually filed Dr. Kumar's affidavit, and his failure to file and serve the affidavit on or before February 18, 2000 did not delay the February 25, 2000 hearing.[12]

■ In addition, the record does not show that Dr. Handal was actually prejudiced by the delay in filing Dr. Kumar's affidavit. Mr. Shumate had received a draft copy of the affidavit on February 18,

2000, and the record reflects that he effectively presented his motion for summary judgment and challenged the adequacy of Dr. Kumar's affidavit at the February 25, 2000 hearing. But while Dr. Handal suffered no real prejudice because of the late filing of Dr. Kumar's affidavit, Ms. Kenyon's case would have been mortally wounded had Dr. Kumar's affidavit been excluded. Dr. Kumar's affidavit was Ms. Kenyon's only defense against Dr. Handal's motion for summary judgment. She had no other evidentiary materials of the sort required by Tenn. R. Civ. P. 56.06 to demonstrate the existence of a genuine factual issue for trial. Without Dr. Kumar's affidavit, granting Dr. Handal a summary judgment would have been a virtual certainty.

■ These considerations tip the scales, albeit slightly, in favor of permitting Dr. Kumar's February 22, 2000 affidavit to be filed late. We reach this conclusion not to reward Mr. Johnston but to prevent undue prejudice to Ms. Kenyon. Accordingly, we hold that the trial court erred by concluding that there was no basis to excuse Mr. Johnston's failure to file and serve Dr. Kumar's affidavit on or before February 18, 2000.

### III.

#### SUFFICIENCY OF DR. KUMAR'S FEBRUARY 22, 2000 AFFIDAVIT

We now turn to the sufficiency of the affidavit Dr. Kumar signed on February 22, 2000 that was filed with the trial court on February 24, 2000.[13] Ms. Kenyon insists that the trial court erred because this

---

12. The only delay in this phase of the proceeding was the one-week delay in the hearing from February 18, 2000 to February 25, 2000. Dr. Handal is in no position to complain about this delay because he agreed to it.

13. The trial court did not exclude this affidavit, even though it had determined that the affidavit was not timely filed and that Mr. Johnston had failed to provide good cause for his failure to comply with Tenn. R. Civ. P. 56.04's deadline for filing opposing affidavits.

affidavit "obviously" demonstrates that Dr. Kumar is qualified to give an opinion in a medical malpractice case and because Dr. Kumar has "clearly" described the standard of care applicable to Dr. Handal's conduct. We respectfully disagree.

### A.

Subject to the "common knowledge" exception not applicable here, patients filing medical malpractice suits cannot recover unless they introduce competent expert proof establishing the three statutory ingredients of their claim. Tenn.Code Ann. § 29–26–115(a); *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 92 (Tenn.1999). It is now commonplace for medical practitioners to use these statutory requirements to put their patient's claim to the test by forcing them to reveal the identity of their testifying experts early in the litigation. The practitioners' chosen vehicle is a motion for summary judgment supported by their own self-serving affidavit stating that their conduct neither violated the applicable standard of care nor caused injury to their patient that would not otherwise have occurred.[14] An affidavit of this sort effectively negates the negligence allegations in the patient's complaint and effectively forces the patient to demonstrate the existence of a genuine, material factual dispute warranting a jury trial. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 438 (Tenn.1998); *Dunham v. Stones River Hosp., Inc.*, 40 S.W.3d 47, 51 (Tenn.Ct. App.2000).

Patients faced with their physician's summary judgment motion cannot rest on the allegations in their complaint. Tenn. R. Civ. P. 56.06; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); *Blocker v. Regional Med. Ctr. at Memphis*, 722 S.W.2d 660, 661 (Tenn.1987). They must demonstrate the existence of triable factual disputes either by (1) pointing to evidence ignored or overlooked by the physician, (2) rehabilitating evidence attacked by the physician, or (3) producing additional evidence establishing the existence of a genuine factual issue. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 598 (Tenn.Ct.App.2001).[15] Because the practitioners most often file their summary judgment motions before much discovery has occurred, the only practical alternative available to most patients is to file an expert affidavit contradicting their physician's affidavit.

Patients who are unable to produce an expert affidavit of their own face almost certain dismissal of their complaint because the physician has effectively negated an essential element of their case. Without an opposing expert affidavit, patients cannot demonstrate the existence of a genuine factual dispute regarding whether the physician breached the standard of professional practice in the community. *Mabon v. Jackson–Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn.Ct.App. 1997).

14. *See, e.g., Wishon v. Ear, Nose & Throat Assocs., P.C.*, No. E2001–01031–COA–R3–CV, 2001 WL 1523355, at *2 (Tenn.Ct.App. Nov. 29, 2001) (No Tenn. R.App. P. 11 application filed); *Thomas v. O'Toole*, No. M2001–00305–COA–R3–CV, 2001 WL 950200, at *3 (Tenn. Ct.App. Aug. 22, 2001) (No Tenn. R.App. P. 11 application filed); *Smith v. Graves*, 672 S.W.2d 787, 788–89 (Tenn.Ct.App.1984).

15. As we noted in the previous section, the patient may also file a properly supported Tenn. R. Civ. P. 56.07 motion requesting additional time to enable him or her to obtain the needed evidentiary material.

The substance of the evidence offered by the patient to oppose a physician's summary judgment motion must be admissible at trial but need not be in admissible form. *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d at 598; *Versa v. Policy Studies, Inc.*, 45 S.W.3d 575, 582 (Tenn.Ct.App.2000). The affidavit must contain sufficient information to demonstrate that the affiant is qualified to render an expert opinion [Tenn. R. Evid. 104(a)] and that the affiant's opinion will substantially assist the trier of fact [Tenn. R. Evid. 702]. *Knight v. Hospital Corp. of Am.*, No. 01A01–9509–CV–00498, 1997 WL 5161, at *5–6 (Tenn. Ct.App. Jan. 8, 1997) (No Tenn. R.App. P. 11 application filed). It must also comply with the requirements of Tenn. R. Civ. P. 56.06 and Tenn.Code Ann. § 29–26–115. *Church v. Perales*, 39 S.W.3d 149, 166 (Tenn.Ct.App.2000).

A medical malpractice claim may not survive a summary judgment motion even when the patient files an opposing affidavit. It is now commonplace for medical practitioners to challenge the qualifications of the patient's expert. These challenges most frequently focus on the ability of the patient's medical expert to satisfy the mandatory qualifications in Tenn.Code Ann. § 29–25–115. Decisions regarding the qualifications or competency of an expert are entrusted to the trial court's discretion. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Accordingly, appellate courts reviewing a trial court's decision regarding the qualifications or competency of a patient's medical expert employ the "abuse of discretion" standard. *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn.2002); *Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn.1998); *Roberts v. Bicknell*, 73 S.W.3d 106, 113 (Tenn.Ct.App. 2001); *Howell v. Baptist Hosp.*, No.

M2001–02388–COA–R3–CV, 2003 WL 112762, at *4 n. 5 (Tenn.Ct.App. Jan. 14, 2003).

The analysis of the qualifications of the patient's medical expert most often entails examining the expert's recitation of his or her qualifications either in an affidavit opposing the motion for summary judgment or in a deposition, if one has been taken. We have not heretofore explicitly described the standard for interpreting these statements. Even though we have repeatedly urged lawyers to couch their medical experts' affidavits in the language of Tenn.Code Ann. § 29–26–115, we do not require rigid adherence to the statute. Rather, we examine the substance of the statements to determine whether they are based on trustworthy facts or data. *Roberts v. Bicknell*, 73 S.W.3d at 113; *Church v. Perales*, 39 S.W.3d at 166. Mindful of the procedural posture of the case, we must view these statements in the light most favorable to the non-moving party, and we must draw all reasonable inferences in the non-moving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Eyring v. Fort Sanders Parkwest Med. Ctr.*, 991 S.W.2d 230, 236 (Tenn. 1999).

**B.**

The version of Dr. Kumar's February 22, 2000 affidavit that the trial court considered at the February 25, 2000 hearing contains the following description of Dr. Kumar's education, experience, and qualifications:

1. I am Surender V. Kumar. I am a citizen and resident of the State of Georgia. I am over the age of 18.

2. I am a medical doctor. I limit my medical practice to obstetrics and gynecology. Despite my speciality, based upon my medical school training, internship, and residency, I am familiar with

general medical practice which constitutes common knowledge of all medical doctors. This common knowledge does not vary from state to state or from medical specialty to medical specialty. I am board certified in obstetrics and gynecology by the American Board of Obstetrics and Gynecology. Attached as Exhibit A to my Affidavit is a copy of my curriculum vitae which sets forth my education, experience and personal background.

3. I practice obstetrics and gynecology at my office located at 3327 Highway 5, Douglasville, Georgia. I am licensed to practice medicine in the State of Georgia and was licensed to practice medicine in the State of Georgia in *1971*.[16] I was licensed to practice medicine in the State of Georgia in my specialty in January, 1998, which is the time of the events complained of in this action. In January, 1998, as well as the date of the preparation of this Affidavit, the standard of care for obstetrics and gynecology in the State of Tennessee, including Gallatin, Tennessee, as it relates to the diagnosis and treatment of medical problems, and labor and delivery situations such as those experienced by Robyn Kenyon in January, 1998, was the same standard of care required by an obstetrician in the State of Georgia. The standard of care under which a general diagnosis and treatment of prenatal care, labor and delivery is identical in the State of Georgia as in the State of Tennessee. The diagnostic tests available to an obstetrician in the State of Georgia and the State of Tennessee to investigate symptoms of a patient and unborn child such as Robyn Kenyon and Baby Girl Kenyon in January 1998, are identical. The standard of care under

which an obstetrician makes his or her decision as to when and how to perform a caesarean section is identical in the State of Georgia as in the State of Tennessee. Therefore, I am familiar with the standard of care of an obstetrician treating Robyn Kenyon and Baby Girl Kenyon in January, 1998 at Sumner Regional Center, Gallatin, Tennessee. I am qualified to render the opinions set forth in my Affidavit.

Despite the statement in paragraph two that Dr. Kumar's curriculum vitae was attached to the affidavit, it was not attached. Thus, Dr. Kumar's curriculum vitae was not before the trial court at the February 25, 2000 hearing. As far as this record shows, Dr. Kumar's curriculum vitae was never submitted to the trial court.

### C.

We agree with the trial court's conclusion that Dr. Kumar's February 22, 2000 affidavit does not demonstrate that he is qualified to render an expert opinion in a medical malpractice case. However, we base our decision on only one ground. While a fair and reasonable reading of Dr. Kumar's affidavit indicates that he was licensed to practice obstetrics and gynecology in Georgia in January 1998, we have concluded that Dr. Kumar failed to provide an acceptable basis for his assertion that he was familiar with the applicable standard of professional practice for obstetricians and gynecologists in Gallatin or Sumner County.

### 1.

### Tenn.Code Ann. § 29–26–115(b)

Tenn.Code Ann. § 29–26–115(b) contains a two-fold requirement that must be met

---

**16.** As we have already noted, the affidavit that Dr. Kumar actually signed on February 22, 2000 did not have the year "1971" filled in. This information was added later, but the record does not reveal how this addition was made.

before a medical expert may render an opinion in a medical malpractice case in Tennessee. It requires, in part, that a physician must be "licensed to practice in the state or a contiguous bordering state" and must have "practiced this profession in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred." We have interpreted this language to require that a testifying physician must have been licensed and practicing at some time during the year preceding the date of the alleged injury or wrongful act. It does not require the physician to have been licensed and practicing for the entire year. *Steele v. Ft. Sanders Anesthesia Group, P.C.*, 897 S.W.2d 270, 280 (Tenn.Ct.App.1994).

Dr. Kumar's statement in paragraph three of his affidavit that he "was licensed to practice medicine in the State of Georgia in 1971," taken by itself, would not satisfy Tenn.Code Ann. § 29–26–115(b). It does not rule out the possibility that Dr. Kumar was not licensed or practicing during the year preceding January 9, 1998. He could have surrendered or retired his license, or he could have left or suspended his practice during that time. Thus, this sentence is too vague as to time and duration to satisfy Tenn.Code Ann. § 29–26–115(b). *Howell v. Baptist Hosp.*, 2003 WL 112762, at *8 (holding that an affiant's statement that he "has been an Associate Professor of Anesthesiology at Vanderbilt University Hospital" was "too vague as to time and duration"). This ambiguity could have been avoided by stating that Dr. Ku-

mar had been "continuously" licensed to practice and had "continuously" practiced medicine in Georgia since 1971 [17] or by including Dr. Kumar's curriculum vitae with his February 22, 2000 affidavit.[18]

However, Dr. Kumar also stated in paragraph three that he was "licensed to practice medicine in the State of Georgia in my specialty in January, 1998, which is the time of the events complained of in this action." Notwithstanding the shortcomings of the sentence preceding it, this sentence, fairly and reasonably construed, states that Dr. Kumar was licensed to practice obstetrics and gynecology on January 9, 1998. It is reasonable to infer from Dr. Kumar's assertion that he was licensed to practice obstetrics and gynecology in January 1998 that he was also practicing this speciality at the time. Accordingly, this sentence is sufficient to demonstrate that Dr. Kumar satisfied Tenn.Code Ann. § 29–26–115(b)'s requirements with regard to licensure and practice.

### 2.
### Tenn.Code Ann. § 29–26–115(a)(1)

Tenn.Code Ann. § 29–26–115(a)(1) also requires that a patient's expert in a medical malpractice case must have knowledge of the standard of professional practice in the community where the defendant physician practices or in a similar community. *Robinson v. LeCorps*, 83 S.W.3d at 724. The expert is not required to be familiar with all the medical statistics of

---

17. Mr. Johnston was well aware of the importance of the physician stating that he or she has been continuously licensed and had been practicing continuously since the date of licensure. An affidavit prepared during the same time period for one of his other medical malpractice cases stated that the physician "was licensed to practice medicine continually for more than two years prior to April 5,

1999." *Totty v. Thompson*, 121 S.W.3d 676, 678 (Tenn.Ct.App.2003) (No Tenn. R.App. P. 11 application filed).

18. This case is not the first time that a lawyer has overlooked attaching the physician's curriculum vitae to the physician's affidavit. *Howell v. Baptist Hosp.*, 2003 WL 112762, at *4.

the community where the physician practices. *Ledford v. Moskowitz,* 742 S.W.2d 645, 648 (Tenn.Ct.App.1987). However, the expert must go further than simply asserting that he or she is familiar with the applicable standard of care. *Mabon v. Jackson–Madison County Gen. Hosp.,* 968 S.W.2d at 831. The expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. *Spangler v. East Tenn. Baptist Hosp.,* No. E1999–01501–COA–R3–CV, 2000 WL 222543, at *1–2 (Tenn.Ct.App. Feb. 28, 2000) *perm. app. denied* (Tenn. Sept. 11, 2000).

■ For the purpose of Tenn.Code Ann. § 29–26–115(a), the only relevant "community" is the community in which the defendant physician actually practices or in a similar community. *Tilley v. Bindra,* No. W2001–01157–COA–R3–CV, 2002 WL 1000196, at *4–5 (Tenn.Ct.App. May 13, 2002) *perm. app. denied* (Tenn. Nov. 4, 2002). Accordingly, the courts have held that medical experts testifying for a patient in a medical malpractice case may not base their testimony solely on their familiarity with a national standard of professional practice. *Robinson v. LeCorps,* 83 S.W.3d at 724; *Mabon v. Jackson–Madison County Gen. Hosp.,* 968 S.W.2d at 831. We have likewise rejected expert testimony based on a state-wide standard of professional practice, *Totty v. Thompson,* 121 S.W.3d at 678–79; *Tilley v. Bindra,* 2002 WL 1000196, at *4 (holding that the relevant standard of professional practice is not a nationwide or even a statewide standard of care), as well as testimony premised on a regional standard of professional practice. *Howell v. Baptist Hosp.,* 2003 WL 112762, at *8 (holding that an affiant's assertion of familiarity with the applicable standard of professional practice in "Mid-

dle Tennessee" did not provide a basis for testifying regarding the standard of professional practice in Nashville).

■ The fatal shortcoming in Dr. Kumar's February 22, 2000 affidavit is that it does not contain sufficient facts to demonstrate that Dr. Kumar's opinion regarding the applicable standard of professional practice is based either on his familiarity with the applicable standard of professional practice in Gallatin or Sumner County or on his knowledge of the applicable standard of professional practice in a community similar to Gallatin or Sumner County. Nothing in Dr. Kumar's affidavit indicates that he has any personal knowledge of the practice of obstetrics and gynecology in Gallatin or Sumner County. Accordingly, he can comply with Tenn.Code Ann. § 29–26–115(a)(1) only by demonstrating that he knows the applicable standard of professional practice in a community that is similar to Gallatin or Sumner County.

Dr. Kumar does not assert that Douglasville, Georgia where he practices is similar to Gallatin or Sumner County. He bases his familiarity with the applicable standard of care of an obstetrician in January 1998 at the Sumner Regional Medical Center in Gallatin on his conclusion that the standards of professional practice in the State of Georgia are the same as those in the State of Tennessee. Generalizations regarding the similarity of the standards of professional care in two contiguous states are not specific enough information to demonstrate that a medical practitioner is qualified under the locality rule to render an opinion in a medical malpractice case. Accordingly, we affirm the trial court's conclusion that Dr. Kumar's February 22, 2000 affidavit did not demonstrate that he was familiar with the applicable standard of professional practice in Gallatin or Sumner County during the pertinent time period.

## IV.

### MS. KENYON'S TENN. R. CIV. P. 59.04 MOTION

After the trial court granted Dr. Handal's motion for summary judgment, Ms. Kenyon filed a Tenn. R. Civ. P. 59.04 motion requesting the court to alter or amend its order. She attached to this motion a revised affidavit signed by Dr. Kumar on April 4, 2000 and an affidavit prepared by Mr. Johnston describing his efforts to file and serve an affidavit opposing Dr. Handal's summary judgment motion. The trial court denied the motion, stating only that "the affidavits submitted in support of Plaintiff's Motion to Alter or Amend do not justify the granting of Plaintiff's Motion to Alter or Amend." Ms. Kenyon takes issue with this decision.

### A.

The trial court and the parties were faced with conflicting precedents in March 2000 when the court heard Ms. Kenyon's Tenn. R. Civ. P. 59.04 motion. The "lenient" standard of *Schaefer v. Larsen*, 688 S.W.2d 430 (Tenn.Ct.App.1984) was pitted against the "strict" standard of *Bradley v. McLeod*, 984 S.W.2d 929 (Tenn.Ct.App. 1998). It should come as no surprise that the parties in this case based their arguments on the standard most favorable to them. The trial court apparently followed the *Bradley v. McLeod* standard.

Approximately seven months after the trial court denied Ms. Kenyon's Tenn. R. Civ. P. 59.04 motion, the Tennessee Supreme Court resolved the conflict between *Schaefer v. Larsen* and *Bradley v. McLeod* in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000). Charting a middle course between the two standards, the court adopted the following standard:

> When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

*Harris v. Chern*, 33 S.W.3d at 745. Even though *Harris v. Chern* involved a Tenn. R. Civ. P. 54.02 motion, we have consistently used its standards to review Tenn. R. Civ. P. 59.04 motions. *Howell v. Baptist Hosp.*, 2003 WL 112762, at *8 n. 9. The *Harris v. Chern* factors overlap the factors courts consider under Tenn. R. Civ. P. 6.02 when a party requests an enlargement of time after a deadline has passed. Both analyses consider a party's efforts to obtain the needed information,[19] the party's reasons for failing to present the information in a timely manner,[20] and the preju-

---

19. *Compare Harris v. Chern*, 33 S.W.3d at 745 ("the movant's efforts to obtain evidence to respond to the motion for summary judgment") *with State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d at 567 (a relevant circumstance is whether the reason or reasons for the late filing were within the filer's reasonable control).

20. *Compare Harris v. Chern*, 33 S.W.3d at 745 ("the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment") *with State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d at 567 ("the reason why the filing was late").

dice to the opposing party.[21]

**B.**

In Section II of this opinion, we addressed at some length Mr. Johnston's efforts to obtain a satisfactory affidavit to oppose Dr. Handal's motion for summary judgment and his explanation for his inability to serve and file the affidavit before the February 25, 2000 hearing. Indeed, we concluded that the evidence Mr. Johnston presented on these points weighs heavily in favor of the trial court's conclusion that his delay in filing an affidavit opposing Dr. Handal's motion for summary judgment was not the result of excusable neglect. We adhere to this conclusion. The evidence in this record presents no good reason for Mr. Johnston's inability to serve and file an opposing affidavit in a timely manner.

These findings, however, related to the reasonableness of Mr. Johnston's efforts to obtain an affidavit. They did not address the substantive adequacy of the contents of the affidavit. Thus, under *Harris v. Chern,* we must also consider the reasons why Mr. Johnston was unable to obtain an opposing affidavit containing sufficient information to demonstrate that Dr. Kumar was qualified to give an opinion in a medical malpractice case.

In a recent case, we held that a lawyer's belief in the adequacy of the affidavits he or she prepared could provide a "tenable" explanation for not submitting new affidavits after opposing counsel challenged the adequacy of the original affidavits. *Howell v. Baptist Hosp.,* 2003 WL 112762, at

*10. We held that the trial court should have granted the Tenn. R. Civ. P. 59.04 motion and should have considered the "revised affidavit" and curriculum vitae because they did no more than "clarify" the ambiguous statements in the affiant's original affidavit regarding his licensure and employment history. *Howell v. Baptist Hosp.,* 2003 WL 112762, at *11.

▮ *Howell v. Baptist Hospital* should not be read to provide lawyers with a safe haven any time they proclaim that they believed that the affidavit they prepared was substantively adequate. Implicit in *Howell v. Baptist Hospital* is the requirement that the lawyer's belief in the adequacy of the challenged affidavit be in good faith and have some objectively reasonable basis. Close calls should be decided in favor of the party seeking to use Tenn. R. Civ. P. 59.04 to file a corrected affidavit.[22] However, protestations of belief that an affidavit is adequate may not be sufficient to obtain relief under *Harris v. Chern* if the defects and shortcomings in the original affidavit are patent to any reasonably competent lawyer.

The trial court disregarded Dr. Kumar's February 22, 2000 affidavit, in part, because it concluded that the affidavit failed to state that Dr. Kumar had been licensed and practicing in Georgia during the year preceding January 9, 1998 as required by Tenn.Code Ann. § 29–26–115(b). The revised affidavit Dr. Kumar signed on April 4, 2000 effectively responded to this conclusion by clarifying that Dr. Kumar had been licensed and practicing medicine in

---

21. *Compare Harris v. Chern,* 33 S.W.3d at 745 ("the likelihood that the nonmoving party will suffer unfair prejudice") with *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group,* 56 S.W.3d at 567 ("the danger of prejudice to the party opposing the late filing").

22. *Howell v. Baptist Hospital* involved a close call because we noted that the trial court's decision regarding the adequacy of the original affidavit, no matter what it might have been, would most likely have been upheld on appeal. *Howell v. Baptist Hosp.,* 2003 WL 112762, at *11 n. 11.

Georgia "continuously" since 1971. Accordingly, had the ambiguity concerning Dr. Kumar's licensure and employment history been the only shortcoming in Dr. Kumar's February 22, 2000 affidavit, we would not hesitate to find that the trial court should have granted Ms. Kenyon's Tenn. R. Civ. P. 59.04 motion just as we did in *Howell v. Baptist Hospital.* Unfortunately, Dr. Kumar's February 22, 2000 affidavit had another fatal shortcoming that was not addressed in his April 4, 2000 affidavit.

### C.

■ Implicit in the *Harris v. Chern* opinion is the Tennessee Supreme Court's recognition that relief under Tenn. R. Civ. P. 59.04 is available only when the supplemental affidavit effectively remedies the defects or shortcomings in the earlier affidavit opposing the physician's summary judgment motion.[23] Trial courts are not required to grant relief from an order granting a summary judgment if the patient remains unable to demonstrate the existence of a material factual dispute requiring a trial. Thus, if a patient files a motion for Tenn. R. Civ. P. 59.04 relief relying on a new affidavit that itself does not satisfy the requirements of Tenn. R. Civ. P. 56.06, Tenn. R. Evid. 104(a), Tenn. R. Evid. 702, or Tenn.Code Ann. § 29–26–115, the trial court may decline to set aside its previous summary judgment order.

Unlike *Harris v. Chern, Howell v. Baptist Hospital,* and other decisions holding that patients were entitled to Tenn. R. Civ. P. 59.04 relief, the supplemental affidavit filed on Ms. Kenyon's behalf after the trial court granted Dr. Handal's summary judgment motion still does not satisfy the re-

quirements of Tenn. R. Evid. 104(a) and Tenn.Code Ann. § 29–26–115(a)(1). Dr. Kumar's April 4, 2000 affidavit still fails to demonstrate that he is qualified to render an opinion in a medical malpractice case.

Ms. Kenyon, as the plaintiff in a medical malpractice case, was required to demonstrate that Dr. Kumar knew the standard of professional practice for obstetricians in Sumner County or Gallatin in January 1998. Tenn.Code Ann. § 29–26–115(a)(1); *Robinson v. LeCorps,* 83 S.W.3d at 724. Dr. Kumar's February 22, 2000 affidavit was insufficient for this purpose because it did not provide an adequate basis for concluding that he was familiar with the standards for the practice of obstetrics in Gallatin or Sumner County or in a community similar to Gallatin or Sumner County. Thus, if Ms. Kenyon was going to continue to stake the future of her case on Dr. Kumar, her only alternative was to submit another affidavit from Dr. Kumar demonstrating that he was qualified to render an expert opinion regarding the standard of care for obstetricians practicing in Sumner County or Gallatin in January 1998.

■ The statements in Dr. Kumar's April 4, 2000 affidavit regarding his knowledge of the relevant standard of professional practice are identical to the statements in his February 22, 2000 affidavit which we have already found to be insufficient. Thus, Ms. Kenyon failed to cure the shortcomings in Dr. Kumar's affidavit that prompted the trial court to grant a summary judgment to Dr. Handal. The only conclusion that can reasonably be drawn from Dr. Kumar's April 4, 2000 affidavit is that the only basis for his professed familiarity with the standard of care for obstetricians in Gallatin or Sumner County is

---

**23.** In addition to the four specific factors identified in *Harris v. Chern,* the Tennessee Supreme Court invited the consideration of "any other relevant factor." *Harris v. Chern,* 33 S.W.3d at 745. Whether a new or supplemental affidavit effectively rebuts the defendant's affidavit is clearly a relevant consideration.

his belief that the standards of professional practice for obstetricians in the State of Tennessee are the same as the standards of professional practice for obstetricians in his home state of Georgia. This basis will not do. Thus, because the shortcomings in Dr. Kumar's April 4, 2000 affidavit are the same as those in his February 22, 2000 affidavit, the trial court did not abuse it discretion when it determined that the affidavits supporting Ms. Kenyon's Tenn. R. Civ. P. 59.04 motion were insufficient to warrant setting aside the summary judgment.

## V.

We affirm the trial court's March 6, 2000 order granting Dr. Handal's motion for summary judgment and its May 12, 2000 order denying Ms. Kenyon's Tenn. R. Civ. P. 59.04 motion. We remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We also tax the costs of this appeal to Robyn Kenyon and her surety for which execution, if necessary, may issue.