IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 6, 2009 Session

## ESTATE OF JEFFREY MAURO CUSATIS v. ROBERT R. CASEY, M.D.

**Appeal from the Circuit Court for Anderson County**
**No. A6LA0157      Donald Ray Elledge, Judge**

---

**No. E2008-01786-COA-R3-CV  - FILED OCTOBER 28, 2009**

---

In this appeal, plaintiff contends that the trial court erred in granting summary judgment in favor of defendant.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Kevin W. Shepherd, Maryville, Tennessee, for Appellant, Susan Thompson, Administratrix of the Estate of Jeffrey Mauro Cusatis.

Robert H. Watson, Knoxville, Tennessee, for Appellee, Robert R. Casey, M.D.

**OPINION**

### I.  FACTUAL BACKGROUND

This appeal arises out of an action for medical malpractice filed by the plaintiff, Estate of Jeffrey Mauro Cusatis (" the Estate"), against the defendant, Dr. Robert R. Casey ("Dr. Casey").

The record shows that Dr. Casey is a board-certified physician in private practice specializing in family medicine.  He has specialized in family medicine in the Oak Ridge community of Anderson County, Tennessee, since 1986.  Since 1981, he has been licensed to practice medicine in this state.

Dr. Casey became a medical care provider for Mr. Cusatis on or about February 3, 2003, through the last visit with Mr. Cusatis on October 20, 2003.  Mr. Cusatis died of an overdose of Methadone on November 7, 2003.

The Estate's complaint for malpractice was filed on April 6, 2006. A previous lawsuit had been non-suited (No. A4LA0723). In the complaint, the Estate claims Dr. Casey committed malpractice by mis-diagnosing Mr. Cusatis' condition and prescribing several pain killers without proper safeguards in place to prevent addiction or overdose; prescribing an improper dosage of medication; and failing to advise Mr. Cusatis of the risk associated with the medications.

In his answer to the complaint, Dr. Casey, (1) denied that he was negligent in his treatment of Mr. Cusatis and maintained that he acted properly, keeping with good medical practice in accordance with the recognized standard of care; (2) denied that he deviated from the standard of care and proximately caused any of the injuries to Mr. Cusatis; and (3) maintained that the actions of Mr. Cusatis caused or contributed to his own death.

*Summary Judgment Motion and Proceeding*

Dr. Casey filed his first motion for summary judgment with supporting affidavit on September 12, 2006. A subsequent motion for summary judgment with another supporting affidavit was filed on January 4, 2008. Dr. Casey submitted his own affidavit. In the affidavit, Dr. Casey averred that he is a board-certified physician in private practice specializing in family practice, and he is licensed to practice medicine in the state of Tennessee practicing in Anderson County continuously since 1986. Dr. Casey also averred that as a result of his training, education, and experience, he is familiar with the recognized standard of appropriate medical care for medical physicians in Anderson County and similar communities. From reviewing Mr. Cusatis' autopsy report and the medical records from Dr. William Reid and Dr. Diana Wilson, Dr. Casey stated that he complied with the appropriate standard of medical care in Anderson County in his treatment of Mr. Cusatis. In his opinion, to a reasonable degree of medical certainty, he did not deviate at any time from the appropriate standard of professional practice, and neither an act nor omission on his part proximately caused the death of Mr. Cusatis. He admitted to prescribing Methadone, but he did not direct Mr. Cusatis to take an overdose.

In response to Dr. Casey's affidavit, the Estate filed the affidavit of Jonathan Lipman, Ph.D. ("Dr. Lipman"), a neuropharmacologist, who is board-certified by the American Board of Forensic Examiners as well as other Boards. In Dr. Lipman's affidavit, he averred that he was familiar with the recognized standard of appropriate medical care for medical practitioners in Anderson County, Tennessee as a result of his training and experience. Dr. Lipman opined, to a reasonable degree of pharmacological certainty, that Dr. Casey did not comply with the appropriate standard of acceptable medical care in his pharmacological treatment of Mr. Cusatis in 2003. After reviewing Mr. Cusatis' medical records and autopsy report, Dr. Lipman opined that Dr. Casey deviated from the standard of care by ignoring the risk of the medications that he prescribed to Mr. Cusatis.

A hearing on the pending motions was ultimately held on July 14, 2008. The Estate offered no expert testimony from a medical doctor as to the standard of care, or that Dr. Casey deviated from the standard of care. Instead the Estate stressed that Dr. Casey's affidavit failed to actually set forth what the standard of care is in Anderson County for such a medical provider. Further, the Estate noted that the deposition of Dr. John Neff (Dr. Casey's expert) reveals the comment that the use of

tricyclic anti-depressants and Methadone at the same time is fairly unusual and "[it's] not done by physicians."

*Trial Court's Ruling on Summary Judgment*

The trial court granted summary judgment in favor of Dr. Casey on July 18, 2008. In its memorandum opinion, the trial court cited *Smith v. Graves*, 672 S.W.2d 787 (Tenn. Ct. App. 1984) and held that Dr. Casey was competent to testify in his own case, and that his affidavit was sufficient to support a motion for summary judgment.

The trial court found that the Estate's expert, Dr. Lipman, was not qualified to testify in a medical malpractice case because Dr. Lipman is not "a medical doctor" and "is not competent to rebut or raise an issue by law in terms of this summary judgment that is before me." The Estate filed a timely notice of appeal.

## II. ISSUES

The Estate presents the following issues for review, which have been restated as follows:

1. Whether the trial court erred in granting the Motion for Summary Judgment.

2. Whether the affidavit of Dr. Casey was sufficient to support the Motion for Summary Judgment.

## III. STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We must view the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Warren*, 954 S.W.2d at 723 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

In *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), the Court stated that in Tennessee, a moving party who seeks to shift the burden of production to the non-moving party who bears the burden of proof at trial must either:

(1) Affirmatively negate an essential element of the non-moving party's claim; or

(2) Show that the non-moving party cannot prove an essential element of the claim at trial.

*Id.* at 9. Therefore, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. If the moving party fails to make a properly supported motion, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered, and the motion for summary judgment fails. *See Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the non-moving party is required to produce evidence of specific facts establishing that genuine issues of material fact exists. *See Martin,* 271 S.W.3d at 83.

## IV. DISCUSSION

### A.

The Estate contends that the entry of summary judgment against it was inappropriate because it offered Dr. Lipman's testimony, in addition to the testimony of Dr. Casey's expert, Dr. Neff. It further claims that the affidavit of Dr. Casey was conclusory in nature. The Estate notes that while Dr. Casey indicated that he followed the standard of care, he failed to set forth what the standard is.

Specifically, the Estate argues that Dr. Neff and Dr. Lipman both testified that Methadone does not have an intended use for break-through pain. The Estate claims that nowhere in Dr. Casey's affidavit does he set forth what the standard of care is in relation to the prescribing of Methadone. Dr. Neff testified:

> I would wager that nowadays, though, its [Methadone] only use is in treatment programs for people addicted to opioids. I don't think it's used as a therapeutic drug in this country at all.

The Estate further notes that Dr. Casey did not provide why he prescribed Methadone to Mr. Cusatis. At no point does Dr. Casey state that he prescribed the Methadone within normal, acceptable limits; nor does he testify in his affidavit that Methadone was appropriate and conformed to the standard of care for physicians practicing in Anderson County.

The Estate notes that under *Hannan*, Dr. Casey can only sustain his position on summary judgment by either (1) affirmatively negating an essential element of the Estate's claim, or (2) showing that the Estate cannot prove an essential element of the claim at trial. The Estate argues that, at best, Dr. Casey showed that the Estate's expert witness, at the time of the motion, was insufficient. The Estate further claims that to negate an essential element of the claim, Dr. Casey must point to evidence that disproves an essential factual claim made by the Estate. Dr. Casey cannot rely on holes or weaknesses in the Estate's proof. The Estate argues that Dr. Casey has failed to shift the burden to the Estate and that a genuine issue of material fact remains.

Upon our review of Dr. Casey's affidavit, this court agrees with the trial court that the affidavit was sufficient. Dr. Casey's affidavit clearly provides that he is licensed to practice

medicine in the State of Tennessee and he has practiced family medicine in Anderson County, Tennessee, since 1986. In the affidavit, Dr. Casey swore that he is familiar with the recognized standard of appropriate medical care for medical practitioners in Anderson County and similar communities as a result of his training, education, and experience. Dr. Casey averred that in his opinion, to a reasonable degree of medical certainty, he did nothing to cause Mr. Cusatis' injuries, and he complied with the appropriate standard of acceptable medical care in Anderson County, in 2003, in the treatment of Mr. Cusatis. He further averred that at no time did he deviate from or breach that standard. Dr. Casey also explained:

> [I] was treating Mr. Cusatis for a variety of issues. Central to the need for [my] care was the issue he had regarding pain. My treatment for his pain met the standard of care for a physician practicing in my community or similar community.

As a result, this affidavit conforms to the requirement of *Hannan* and affirmatively negates an essential element of the Estate's claim, that Dr. Casey was negligent and that his actions were the proximate cause of the injuries to Mr. Cusatis. The trial court correctly found that under the authority of *Smith*, 672 S.W.2d at 790, Dr. Casey's affidavit as a defendant physician in a medical malpractice suit was sufficient by itself to support summary judgment in that he was competent to testify in his own case. *See also Wishon v. Ear, Nose, & Throat Assocs., P.C.*, No. E2001-01031-COA-R3-CV, 2001 WL 1523355, at *2 (Tenn. Ct. App. E.S., Nov. 29, 2001).

At this point under *Hannan*, the burden of production shifts to the non-moving party (the Estate) who must show that a genuine issue of material fact exists. In this case, to establish a genuine issue of material fact, the Estate must produce a medical expert's affidavit that refutes Dr. Casey's affidavit. However, because this is a medical malpractice action, the Estate must produce a medical expert that satisfies the requirements of Tennessee law.

In a medical malpractice case, a plaintiff carries the burden of proving by expert testimony: (1) the standard of care; (2) that the defendant physician deviated from that standard; and (3) that the defendant physician's negligent act or omission proximately caused injuries to the plaintiff, which would not otherwise have occurred. *See Roddy v. Volunteer Med. Clinic*, 926 S.W.2d 572, 578 (Tenn. Ct. App. 1996). Thus, a medical malpractice plaintiff must not only establish the elements of Tenn. Code Ann. § 29-26-115(a)(1)-(3) (Supp. 2008), but also provide medical experts that meet the requirements of Tenn. Code Ann. § 29-26-115(b) (Supp. 2008). Section 29-26-115(b) provides:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

*Id.*

The case law interpreting the above statute is also clear about the requirements for an expert testifying in a medical malpractice action. As our Supreme Court observed in *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002), a medical expert relied upon by a plaintiff "must have knowledge of the standard of professional care in a defendant's applicable community or knowledge of the standard of professional care in a community that is shown to be similar to the defendant's community." It is critical that expert witnesses actually be familiar with the standard of care in the defendant's community and not "simply assert their familiarity with the standard of professional care in the defendant's community without indicating the basis for their familiarity." *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006); *see also Stovall v. Clarke*, 113 S.W.3d 715, 723 (Tenn. 2003).

As this court held in *Bates v. Metcalf*, No. E2001-00358-COA-R3-CV, 2001 WL 1538535, at *10 (Tenn. Ct. App. E.S., Dec. 3, 2001), Tenn. Code Ann. § 29-26-115(b) mandates that an expert witness testifying as to the standard of care in a medical malpractice action must be licensed to practice medicine in Tennessee or a contiguous bordering state. Without such an expert, a medical malpractice plaintiff fails to sustain his or her burden of proof.

Turning to the case at bar, the Estate failed to show that a genuine issue of material fact exists. It did not offer proof from any physician who practiced medicine in the State of Tennessee or in a contiguous bordering state in the year preceding the events of this lawsuit or at any time whatsoever. Nothing in the record indicates that the Estate presented any individual licensed to practice medicine to render an opinion as to the standard of care, and as to the violation of the standard of care by Dr. Casey.

The only expert offered by the Estate was Dr. Lipman, who is not a physician. Dr. Lipman is not licensed in Tennessee to practice medicine; is not licensed in a contiguous state to practice medicine; has never practiced medicine as a medical doctor; and has not attended medical school.

If a plaintiff in a medical malpractice case intends to overcome a summary judgment motion, that plaintiff must present an affidavit from a medical expert who satisfies the requirements of Tenn. Code Ann. § 29-26-115(b). In *Kenyon v. Handal*, 122 S.W.3d 743 (Tenn. Ct. App. 2003), this court found as follows:

> Patients who are unable to produce an expert affidavit of their own face almost certain dismissal of their complaint because the physician has effectively negated an essential element of their case. Without an opposing expert affidavit, patients cannot demonstrate the existence of a genuine factual dispute regarding whether the physician breached the standard of professional practice in the community.

*Id.* at 758. (citing *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997)).

Also, it is important to note that although it need not be in admissible form at the summary judgment phase, the substance of the evidence, offered by the plaintiff to oppose a physician's summary judgment motion, must be admissible at trial. *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 598 (Tenn. Ct. App. 2001). In the present case, the Estate offered no expert testimony that would be admissible at trial to contradict the affidavit of Dr. Casey. Dr. Lipman is not qualified to offer an expert opinion, and his affidavit did not rebut the assertions contained within Dr. Casey's affidavit. As the *Kenyon* case explains:

> The affidavit must contain certain information to demonstrate that the affiant is qualified to render an expert opinion and that the affiant's opinion will substantially assist the trier of fact.

122 S.W.3d at 759. (citations omitted). *Kenyon* further provides:

> A medical malpractice claim may not survive a summary judgment motion even when the patient files an opposing affidavit. It is now commonplace for medical practitioners to challenge the qualifications of the plaintiff's expert. These challenges most frequently focus on the ability of the patient's medical expert to satisfy the mandatory qualifications in Tenn. Code Ann. § 29-25-115.

*Id.*

Dr. Lipman was not competent to testify to the standard of care at issue in this case. Although Dr. Lipman holds a doctoral degree in neuropharmacology, he does not have a doctoral degree in medicine. Thus, Dr. Lipman does not meet one basic criteria: he is not a medical doctor licensed to practice medicine in Tennessee or a contiguous bordering state. Therefore, the Estate's expert does not satisfy the mandatory qualifications for an expert testifying in a medical malpractice case.

The Tennessee Supreme Court held in *Baldwin v. Knight*, 569 S.W.2d 450, 453 (Tenn. 1978), that a medical malpractice action requires a medical expert who is licensed in this state or a contiguous state. In 1998, this court reaffirmed that requirement in *Harris v. Buckspan*, 984 S.W.2d 944, 949 (Tenn. Ct. App. 1998). Additionally, recent cases punctuate this court's unwavering requirement that a medical expert meet the provisions of Tenn. Code Ann. § 29-26-115(b) when testifying in a medical malpractice action. *See generally Ward v. Glover*, 206 S.W.3d 17, 38 (Tenn. Ct. App. 2006); *Carpenter v. Klepper*, 205 S.W.3d 474, 483 (Tenn. Ct. App. 2006); *Pullum v. Robinette*, 174 S.W.2d 124, 129 (Tenn. Ct. App. 2004).

There is no dispute in this action that the proximate cause of death of Mr. Cusatis was an overdose of Methadone. It is also undisputed that the overdose was not an amount prescribed by Dr. Casey. There is no other proof that the cause of death was anything other than an overdose by the decedent's own actions. Summary judgment was appropriate because the Estate did not rebut Dr. Casey's affidavit with an affidavit from a qualified expert. "[S]ummary judgment in favor of defendants in a medical malpractice action may be appropriate where the defendants produce expert proof that completely refutes the plaintiff's allegations of negligence and the plaintiff does not

produce rebuttal proof by expert testimony." *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 98 (Tenn. 1999); *see also Lovin v. Charles E. Nave, D.D.S., P.C.*, No. E2002-00686-COA-R3-CV, 2003 WL 164281, at *4 (Tenn. Ct. App. E.S., Jan. 22, 2003). Because the Estate has failed to produce the required expert, the trial court properly granted summary judgment in favor of Dr. Casey.

B.

The Estate asserts the attestation clause signed by the notary on Dr. Casey's affidavit is deficient. It claims Dr. Casey did not sign the affidavit under oath swearing that he was telling the truth and that the contents were based on his personal knowledge. If the affidavit is stricken, there is no competent proof by Dr. Casey to support the motion for summary judgment.

Rule 56.06 of the Tennessee Rules of Civil Procedure provides that affidavits shall be made on personal knowledge, shall set forth such facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein. *See* Tenn. R. Civ. P. 56.06. After reviewing Dr. Casey's affidavit, we are satisfied that it meets the criteria of Tenn. R. Civ. P. 56.06. Dr. Casey's affidavit begins with, "The affiant, Robert R. Casey, M.D., after being first duly sworn according to the law and states as follows[.]" Additionally, it appears that the facts contained within the affidavit were *personally known* to Dr. Casey.

As a result, finding no merit in the Estate's contention, we hold that the trial court correctly determined that Dr. Casey's affidavit was sufficient. Accordingly, we affirm.


V. CONCLUSION

The Estate simply failed to produce a medical expert that met the statutory requirements to allow the maintenance of this case. Such failure to provide this evidence amounts to a failure to create a disputed fact. As a result, the Estate failed to create a dispute, and the case was correctly dismissed.




The trial court's granting of the motion for summary judgment is affirmed. Costs on appeal are taxed to the Appellant, the Estate of Jeffrey Mauro Cusatis.


_____
JOHN W. McCLARTY, JUDGE


-8-