IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 14, 2011 Session

## MARY SUSAN REHRER, v. MARK ELWYN REHRER

**Appeal from the Circuit Court for Hamilton County**
**No. 10 D 310      Hon. Jacqueline S. Bolton, Judge**

**No. E2010-01907-COA-R3-CV-FILED-SEPTEMBER 15, 2011**

In this case petitioner wife obtained an order of protection against her husband.  The husband, following trial, filed a Motion to reopen the proof, pursuant to Tenn. R. Civ. P. 59, and attached numerous affidavits contradicting some of petitioner's evidence presented at trial.  The Trial Court overruled the Motion and the husband has appealed.  We affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

John R. Meldorf, III, Hixson, Tennessee, for the appellant, Mark Elwyn Rehrer.

John P. Konvalinka, Chattanooga, Tennessee, for the appellee, Mary Susan Rehrer.

## OPINION

### Background

Petitioner, Mary Susan Rehrer ("wife"), Petitioned for an Order of Protection against her husband, Mark Rehrer ("husband"), alleging that on February 8, 2010, the husband tried to break in the bedroom door where she and her children were hiding, and that he attacked her from behind, ripping things from her arms and grabbing her right wrist, causing injury.

She alleged that the husband verbally assaulted her days before and made her fear for her life, and tried to make her sign various financial documents. She further alleged that the husband refused to leave the marital residence, and that he possessed a firearm.

The Court issued an Ex Parte Order of Protection, and set the matter for hearing. The first hearing was continued for one month, but it was ordered that the husband could retrieve a motor home, a Dodge Ram truck, and a Mercedes from the marital residence.

At the hearing on March 29, 2010, the wife testified that she and the husband had been married since October 2007, and they did not have any children together, but she had two boys from a previous marriage, ages 14 and 15, who lived with her. She testified that she and the husband separated on February 9, 2010, when she obtained the Ex Parte Order of Protection. She testified that she was self-employed, and ran a marketing business, and that the husband was an instructor for JROTC for Hamilton County. She further testified that the husband used to keep a Glock handgun in the home.

The wife testified that she and the husband had decided to divorce but agreed to continue living together for two months, but the husband became increasingly verbally abusive, and threatened to "destroy" her. She testified that on February 8, 2010, she had had enough of his verbal abuse and decided to create a "safe space" for herself by moving his things out of the bedroom. She testified that this is what she was doing when the husband lunged at her from behind and "snapped" her arm. She testified that the husband called the police because she was moving his things, and she thought all she had at the time was a small laceration on her arm, which she showed to the officer.

The wife testified that the officer (identified to be Officer Wood) told her that the cut on her arm wasn't significant enough to warrant an arrest for assault, but she kept herself, her sons, and their school friend locked in her bedroom for the rest of the night. The wife testified that the house was hers, and that she owned it before their marriage, and that the husband left the next morning and took important business documents with him.

The wife testified that she stayed in the house for the next 5 days because she was afraid. She testified that she called the police to report the husband had taken documents pertaining to her business, and they arrested him. The wife testified that she didn't go to the doctor right away with her injury because she was afraid, and because she was mourning her father's death. She testified that when she did go to the doctor, it was discovered that she had a fractured clavicle.

The wife testified that she was afraid of the husband and needed an Order of Protection.

The wife testified that she didn't leave the house for days, except to get the OP and close the bank account. She testified that a few days before their altercation on the 8th, they had an argument and husband got in her face, shaking his hands and yelling "F*** you, F*** you, F*** you", and that she thought he might throw her from the balcony. She testified the husband "scared her to death" when he was angry, and that she didn't own a gun, but her father kept a pistol in the house for a while, but took it with him when he left.

Garrett Cody testified that he was a junior in high school, and was at the Rehrer house on February 8. He testified that he left right before the husband arrived home, and that he knew the wife had been moving the husband's stuff out of the bedroom to make a "safe spot", but he was at practice when one of the boys called him and told him the police had been called, so he left and went back to the house. He testified that when he arrived, the wife was talking to the officer in her room. He testified that he saw the officer leave without doing anything, and then they all locked themselves in the bedroom. Cody testified that the wife had cut on her arm that was not there before, and that the husband tried to break into the bedroom, and that he banged on the door. Cody testified the husband put a ladder up to the window and tried to look in.

Cody testified that he was 17, and that he and his mother had bought a franchise from the wife.

Officer Jason Wood testified that he worked for the City of Chattanooga Police Department, and that he responded to the call from the Rehrer home on February 8, and followed procedure. Wood testified that if he determined there was an aggressor, he would take that party to jail, but when he arrived at the house, the husband met him in the driveway, and told him the wife was moving his stuff out. The officer said that he went inside and spoke to the wife, and the husband seemed agitated, but was polite. He related that the wife told him they were having marital problems and she wanted the husband gone. He testified that he told the wife it was both parties' home, since they were married, and that he couldn't make anyone leave. He encouraged the parties to separate, and admitted the wife told him she was scared of the husband.

Wood testified that he asked the wife if there had been an assault, and he thought she said maybe there had been in the past, but he wasn't sure. He testified the wife told him nothing had happened that day, and that he didn't see any signs of injury. Wood testified that when he left, he was under the impression the husband was leaving soon.

Wood testified that he was called back to the house 2-3 hours later by the husband, and that there was a juvenile there the that husband didn't want to be there. He testified that he told the husband it was the wife's house, too, and if she wanted the child there, he

couldn't make him leave.

Sonya Naulta, the husband's ex-wife, was the next witness, and she testified that they had a daughter, Gabby, who was twelve, and that she was a Licensed Clinical Social Worker. She testified that she got a text from the wife in the late afternoon on February 8, telling her to come and get Gabby because she didn't need to be there. Naulta testified that she told the husband she would pick Gabby up because she didn't want "any more drama" as "there's been enough craziness". She testified the husband had never been violent to her, but had beat up her boyfriend on one occasion.[1]

The husband testified that he had never struck nor threatened his wife or the children, and that they decided to continue living together for two months, but then on the 8th, the wife called him at work, and was upset, asking if his pay was going to be deposited into their account. The husband testified that he told her no, and the wife became upset and told him he could no longer stay there and that she was going to move his stuff out.

He testified that when he got home, his stuff was sitting outside, and some of it had been put in the motorhome. He testified he was going to call the police but before he could do so, one of the wife's sons called, and the husband testified that he met the officer in the driveway.

He testified that after talking with the officer on the 8th, he knocked on the bedroom door to let the wife know their pastor was there, and the wife said she didn't want to talk to him, so he sat in the living room and talked with him. The husband said the wife did eventually let the pastor in the bedroom and talked with him for a minute. The husband testified that later that night, he was on the couch and saw Cody walking through the house. He stated that he asked him nicely to leave because they were having a "family situation", but Cody refused, and the husband called the police again.

The husband testified that the wife's younger son, Chuck, was in his room playing on the computer for most of the evening, and that he also came out at one point and ate a bowl of cereal. The husband testified the wife's other son was in the basement feeding his pet mice at some point, and that he talked to him, too. The husband denied that he did any of the things the wife alleged in her petition, and denied that he put a ladder up to the window that night, but rather that it had been there for a while, from when he was cleaning the window and didn't finish. He admitted that he had been violent toward his ex-wife's boyfriend, who he described as a coward and a thug.

---

[1]The wife was aware of this assault when she filed her Petition.

The Court ruled from the bench and stated that the truth probably lies somewhere in the middle of what both parties said, but that she had to judge their credibility, and she determined that there was sufficient evidence to issue the OP.

The Court entered an Order of Protection, finding the husband had committed the acts alleged in the Petition, and that this was abuse pursuant to the statutory definition. The Order was to be good for one year, and the husband was ordered to dispossess himself of his firearm.

The husband filed a TRCP 59/60 Motion to Alter or Amend or for New Trial, asserting that the Trial Court erred in granting the Order of Protection because there was no evidence of abuse or fear, and also that the Court erred in restricting the husband's use/possession of a firearm. The husband filed various affidavits in support of his Motion, including an Affidavit of Shannon Lucas, who testified that she attended the same church as the wife, that she attended a worship service on March 14, 2010, with the wife and that the wife acted normal, had no complaints of pain or injury, and used her arms normally. The husband filed an Affidavit of Harry Bickel, who also stated that he attended the wife's church, and that she seemed fine on March 14, 2010, but she did come to church two Sundays later with her right arm in a sling.

Additionally, the husband filed an Affidavit of Helena Johnson, who stated that she was a former friend and business associate of the wife, and that she knew the wife injured her shoulder about four years ago, and that she had recurring problems with it, but the wife told her on March 13, 2010, that the husband had "snapped her collarbone in two" and "detached her rotator cuff" during their altercation.

The husband filed an Affidavit of Bic Pedeville, who stated that he attended the wife's church, that he was at her house on February 14, 2010, for a "music jam" session, and that she behaved normally, had no complaints of pain or injury, and used her arms to lift food trays out of the oven. Pedeville stated that he also saw the wife type on a computer and use a mouse on March 10, and the first time the wife complained of an injury to him was on March 14, when she told him the husband had torn her rotator cuff, and that he saw her wearing a sling on March 18.

The husband also filed an Affidavit, stating that he had to attend a hearing in criminal court on May 13, 2010, regarding the charge of assault filed against him by the wife, and the wife did not appear and the Court dismissed the charges against him.

Also, the husband filed an Affidavit of Garrett Cody, who stated that he had testified falsely at the hearing on certain points, and that he was dependent on the wife at the time for

a place to stay, and the wife told him that if he didn't testify in her favor she would kick him out. Cody stated that the wife did have a "scratch" on her right wrist after her altercation with the husband on February 8, and that she said "I do not know how it happened, maybe it was a coat hanger, maybe it was Mark." Cody stated that, contrary to his testimony at the hearing, the husband did not bang on the bedroom door, nor try to break in, and he also did not put a ladder to the window and try to look inside. Cody stated that after the hearing, the wife had sent him sexually suggestive text messages, had suggested they engage in sexual activity, and has asked him to kiss her.

The wife apparently filed various affidavits in response, as the husband filed a Motion to Strike in Part, seeking to strike the affidavits of the wife, her children, a police officer, and others. Those affidavits filed by the wife are not in the record, however, and the Trial Court entered an Order denying the husband's motions, and the husband appealed.

The issues on appeal are:

1.      Whether the Trial Court erred in granting an Order of Protection where there was insufficient/conflicting evidence to support it?

2.      Whether the Trial Court erred in failing to re-open the proof, when petitioner was allowed to testify to facts and injuries not alleged in her petition, and when multiple affidavits were filed by respondent contradicting petitioner's testimony?

3.      Whether petitioner should be awarded her fees in this appeal?

The husband argues the Trial Court erred in failing to grant his motion to re-open the proof in this case pursuant to Tenn. R. Civ. P. 59[2], in light of the "overwhelming" evidence contained in the affidavits appended to his motion, which he states directly contradicts the wife's testimony at trial. Those affidavits, as explained earlier, include testimony from various friends/acquaintances of the wife, who stated she did not begin to complain about an injury until a few weeks after February 8. There is also the husband's affidavit, stating the assault charges the wife filed against him were dismissed, and an affidavit of Garrett Cody, who recants that portion of his testimony at trial regarding the husband trying to break in the bedroom door, banging on the door, and placing a ladder against the balcony trying to look in the window. Cody does, however, restate that the wife had a "scratch" on her forearm.

---

[2] While the appellant's motion also relied upon Tenn. R. Civ. P. 60, appellant has raised no issue on appeal concerning Rule 60.

As the husband concedes, our Supreme Court has ruled that it is within the discretion of the trial court whether or not to re-open proof under Tenn. R. Civ. P. 59. As it has stated:

> While "a trial court's ruling [under this standard] will be upheld so long as reasonable minds can disagree as to propriety of the decision made," see *State v. Gilliland*, 22 S.W.3d 266, 270 (Tenn. 2000), we will nevertheless reverse the decision if "the court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining," *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn.1999).

*State v. Scott*, 33 S.W.3d 746 (Tenn. 2000). The abuse of discretion standard does not allow this Court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001).

The husband argues the Trial Court relied on perjured testimony and that he had been "blindsided" by the evidence at trial, and it was error for the Court not to consider the affidavits he filed to reopen the proof.

What the husband fails to acknowledge, however, is that in order to get an Order of Protection, the wife did not have to prove that she was actually injured. Rather, she had to prove that she was in "fear of physical harm". Tenn. Code Ann. §36-3-601. Assuming arguendo that the Court would disregard the testimony by the wife regarding her injury and disregard the testimony of Cody, there was still the wife's testimony that she was in fear of the husband, and believed on at least two occasions that he would physically harm her.

As this Court has repeatedly held, the trial court is in the best position to judge the credibility of the witnesses, and the trial court's findings regarding credibility are accorded great deference. *Walton v. Young*, 950 S.W.2d 956 (Tenn. 1997). In this case, the Trial Court specifically found, in its ruling from the bench, that while the truth was likely "somewhere in the middle" of the parties' divergent testimony, she had judged their credibility and found that there was sufficient evidence to issue the Order of Protection on the wife's behalf. Clearly, the Court credited the wife's testimony regarding her fear of the husband, and this is all that is required under the statute to issue an Order of Protection. Moreover, Officer Wood testified the wife told him she was afraid of the husband, and that there "maybe" had been an assault in the past. Accordingly, the husband has shown no abuse of discretion in the Trial Court's refusal to re-open the proof in this case based upon the affidavits.

As this Court has previously stated:

In *Harris v. Chern*, *supra*, the Tennessee Supreme Court held that, when additional evidence is submitted to support a motion to revise a grant of summary judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, a trial court should consider, when applicable: (1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; (2) the importance of the newly submitted evidence to the movant's case; (3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; (4) the likelihood that the nonmoving party will suffer unfair prejudice; and (5) any other relevant factor. "Even though *Harris v. Chern* involved a Tenn. R. Civ. P. 54.02 motion, we have consistently used its standards to review Tenn. R. Civ. P. 59.04 motions." *Kenyon v. Handal*, 122 S.W.3d 743, 763 (Tenn. Ct. App. 2003). "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). A motion to alter or amend should be granted when the controlling law changes before the judgment becomes final, when previously unavailable evidence becomes available, or when necessary to correct a clear error of law or prevent injustice. *Id.* "A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *Id.*

*In re Estate of Storey*, 2011 WL 2174901 (Tenn. Ct. App. May 31, 2011). Rule 59 also does not allow the parties to relitigate matters that have already been adjudicated. *Vaccarella v. Vaccarella*, 49 S.W.3d 307 (Tenn. Ct. App. 2001).

The husband's attempt to present new evidence was an effort to relitigate a matter that has already been adjudicated, and the Trial Court properly denied the Motion. The husband has not shown that "the Court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining". *See State v. Scott.* Reasonable minds could clearly disagree as to the propriety of the Court's decision, and as such, it has not been shown the Trial Court abused its discretion in failing to re-open the proof.

Any findings by the trial court regarding credibility are given great deference. This Court has previously said that for "the evidence to preponderate against a trial court's finding of fact, it must support another finding with greater convincing effect." *Land v. Casteel*, 2011 WL 808784 (Tenn. Ct. App. Mar. 8, 2011); *Brown v. Vaughn*, 2010 WL 3767123 (Tenn. Ct. App. Sep. 28, 2010). Our review of the evidence and giving proper deference to the Trial Court's findings on witness credibility, the evidence does not preponderate against the Trial Court's finding that there was sufficient proof to support the issuance of an Order of Protection in this case.

The wife seeks an award of her fees and costs incurred in defending this appeal, pursuant to Tenn. Code Ann. §36-3-617(a)(1), which provides:

> Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim or sexual assault victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state.

Since the Trial Court issued the Order of Protection, finding "abuse" as defined by the statute, and since this Court is upholding the issuance of said Order of Protection on appeal, under the statute the wife is entitled to an award of attorney's fees and costs incurred in defending this appeal. *See Land v. Casteel*, 2011 WL 808784 (Tenn. Ct. App. Mar. 8, 2011); *Brown v. Vaughn*, 2010 WL 3767123 (Tenn. Ct. App. Sep. 28, 2010).

The Judgment of the Trial Court is affirmed and the cause remanded to the Trial Court to establish an award of reasonable attorney's fees and costs the wife incurred in defending the appeal of this case.

The cost of the appeal is assessed to Mark Elwyn Rehrer.

_____
HERSCHEL PICKENS FRANKS, P.J.