

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

FILED
Feb 23, 2022
10:26 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

| | | |
|---|---|---|
| Emilie Love | ) | Docket No. 2020-06-0102 |
| | ) | |
| v. | ) | State File No. 24525-2019 |
| | ) | |
| Love Management, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard January 25, 2022 |
| Compensation Claims | ) | via Microsoft Teams |
| Joshua D. Baker, Judge | ) | |

---

### Reversed and Remanded

---

The employee suffered serious injuries as she was placing luggage in the trunk of a car when a second car struck her and pinned her between the two vehicles. The workers' compensation insurer for the purported employer denied the employee's claim, asserting among other defenses that the employee's injuries did not occur in the course and scope of her employment. Following the entry of an order allowing the employee to cancel an expedited hearing, the employee filed a motion for partial summary judgment asserting she was entitled to a judgment as a matter of law finding that her injuries occurred in the course and scope of her employment. The parties agreed to a hearing date for the motion, but the insurer subsequently requested the court to continue the hearing to allow it more time to conduct discovery. The trial court denied the motion to continue the hearing and granted the employee's motion for partial summary judgment, concluding the undisputed material facts showed the employee was working in her capacity as marketing director for the employer on the date of her injury. The insurer has appealed. We reverse the trial court's grant of partial summary judgment to the employee and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Judge Pele I. Godkin joined. Presiding Judge Timothy W. Conner filed a concurring opinion.

Nicholas S. Akins and Connor R. Sestak, Nashville, Tennessee, for the carrier-appellant, Zenith Insurance Company

Steven Fifield, Nashville, Tennessee, for the employee-appellee, Emilie Love

A. Allen Grant and Ryan A. Mirian, Nashville, Tennessee, for the employer-appellee, Love Management, Inc.

1

**Factual and Procedural Background**

It is undisputed that, on February 24, 2019, Emilie Love ("Employee"), a Texas resident, flew from Texas to Nashville, Tennessee. It is also undisputed that, while in the ride share area of the Nashville airport, Employee was placing her luggage in the trunk of a vehicle when an Uber vehicle came from behind her, failed to stop, and pinned her between the two vehicles, resulting in serious injuries to Employee.[1]

Chronologically, the record before us begins with a January 23, 2020, petition for benefits filed by Employee indicating she was injured at the Nashville airport when she was pinned between two cars. The petition indicates Employee had not received a list of three doctors and had not received medical care from her purported employer, Love Management, Inc. ("Love Management"), or its insurance carrier, Zenith Insurance Company ("Zenith"). Further, the petition indicates Employee missed time from work due to her injuries and either had not been paid for missing work or believed she was owed more money than she received. A position statement accompanied Employee's January 2020 petition as well as an affidavit of an administrative assistant for Employee's attorney. In addition, Employee submitted her own affidavit with her petition.[2]

The position statement accompanying Employee's January 2020 petition described the February 2019 accident and alleged the accident occurred "in the course and scope of [her] employment with Love Management." It identified and addressed four grounds Employee noted to be the basis for Zenith's denial of Employee's claim, asserting there

---

[1] The extent of Employee's injuries and the medical care necessary to treat Employee's injuries are not at issue in this appeal.

[2] Our presentation of the factual and procedural background and our review in this case are hampered by an incomplete appellate record. The depositions of Employee and her husband, Tim Love, were relied on to support a motion for partial summary judgment filed by Employee but are not included in the record on appeal. Employee, Love Management, and Zenith have presented numerous factual allegations in motions, briefs, and other filings in the Court of Workers' Compensation Claims and in their briefs on appeal that we are unable to corroborate from the record due to the absence of the depositions. Similarly, the parties address documents that are not in the appellate record as well as filings made with the Tennessee Bureau of Workers' Compensation and the Court of Workers' Compensation Claims that are not in the record. Furthermore, the trial court's order granting Employee partial summary judgment identifies certain statements of material facts presented by Employee but does not indicate whether those statements are supported by Employee's deposition or whether any part of Employee's deposition, beyond excerpts included in her motion for partial summary judgment, was reviewed or considered by the court. According to the trial court's order, Employee made certain affirmations included in her statement of undisputed material facts, but the presence of those statements in the record is limited to excerpts from her deposition as quoted in her motion for partial summary judgment. The trial court's order includes two statements of Mr. Love from his deposition, only one of which is borne out by the excerpts included in Employee's motion. Significantly, and as further addressed below, of the ten statements of allegedly undisputed material facts presented and relied on by Employee, only one of the statements includes *specific* citations to a part of the record before us.

was no merit to the grounds advanced by Zenith. The position statement asserted that, "in initiating this claim, counsel for [E]mployee identified [Employee's] employer as Tim Love Catering, LLC in error." The administrative assistant's affidavit that accompanied Employee's petition explained how the incorrect employer was identified. Employee's statement referenced her affidavit that was filed contemporaneously with her petition in which she affirmed she was the marketing director for Love Management on the date of her injury and traveled to Nashville on February 24, 2019, to perform work related to the Music City Food and Wine Festival in her capacity as marketing director.

A mediator with the Bureau of Workers' Compensation issued a dispute resolution statement on February 26, 2020, indicating "Employer has asserted that further discovery is needed before a decision is made as to the compensability of this claim," and that the parties "were able to reach an agreement that the issues in this claim were not ripe for mediation." More than sixteen months later, Employee filed a new petition for benefits on July 9, 2021, asserting her claim "had been wrongfully denied" and requesting a "dispute resolution statement in order to request an expedited hearing to allow a Judge to rule on the compensability of [her] claim." A dispute certification notice was issued on July 23, 2021, noting the parties disputed the compensability of the claim and Employee's entitlement to medical and temporary disability benefits.

On August 18, 2021, Employee filed a request for an evidentiary hearing in which she sought the payment of temporary disability and/or medical benefits. She filed a Rule 72 declaration in support of her request for an expedited hearing in which she reiterated the information included in the affidavit filed with her January 2020 petition for benefits. In addition, she requested the court to allow her to testify "via videoconferencing" due to the "significant pain and discomfort" she would experience traveling to Tennessee from her home in Texas, noting she was scheduled for surgery on September 14, 2021. On September 17, 2021, separate counsel filed a notice of appearance for Love Management.

The next document in the record is a September 23 order of the trial court canceling a September 28 expedited hearing. The order noted that the trial court "convened a pretrial teleconference on September 21, 2021, at which time the court "asked counsel for [Employee] when her next surgery is scheduled." The order reflects that counsel confirmed to the court that Employee had surgery scheduled for September 28, 2021, the date of the scheduled expedited hearing and that Employee's counsel "asked to cancel the expedited hearing and intends to proceed with a compensation hearing when [Employee] reaches maximum medical improvement." Accordingly, the court cancelled the expedited hearing and set the claim for a status conference on December 6, 2021.

Approximately two hours after the entry of the court's order canceling the expedited hearing, Employee filed a motion for partial summary judgment with two exhibits comprising approximately 40 pages. Employee's motion was accompanied by a statement of allegedly undisputed material facts. In her motion, Employee sought partial summary

3

judgment "on the issue of her February 24, 2019[] injuries occurring in the course and scope of her employment with Love Management." The motion addressed some of the testimony from the depositions of Employee and Mr. Love, and it included limited excerpts from both depositions. Employee's statement of undisputed facts included ten separate statements as to which Employee asserted there was no genuine issue for trial. On October 12, Love Management, now represented by counsel separately from its insurer, Zenith, replied to Employee's September 23 motion, agreeing that Employee was working for Love Management "and in the course and scope of her employment at the time of the February 24, 2019[] injury." Love Management filed responses to the ten statements of allegedly undisputed facts filed by Employee, admitting each of the statements.

On October 15, Zenith filed a motion to continue the summary judgment hearing, which the parties had agreed to set for October 25. Zenith's motion to continue alleged numerous factual and procedural matters not otherwise appearing in the record. The motion identified certain discovery responses of Employee and filings by Love Management that Zenith contended evidenced conflicting information as to who Employee's employer was at the time of the accident, what entity paid Employee for the work she performed, and the amount of wages Employee received for her work.

Further, Zenith's motion to continue the summary judgment hearing noted that discovery depositions of Employee and her husband had been conducted. It included excerpts from the deposition transcripts that Zenith asserted evidenced that Employee did not know who her employer was on the date of the accident, did not know who paid her wages, and did not know the amount of the wages she received. In its motion, Zenith asserted that Mr. Love testified he did not know how often or when Employee was paid by Love Management or how many paychecks Employee would have received from Love Management, and that he stated "payroll" would have that information.

Zenith's October 15 motion to continue the summary judgment hearing additionally asserted that an expedited hearing had been set for September 28 and that on September 3 Zenith filed a motion to continue the September 28 expedited hearing, requesting additional time "to further investigate the employer/employee and 'course and scope' issues." Zenith's October 15 motion noted that "[o]n September 14, 2021, the [trial court] issued an order denying Zenith's motion to continue the expedited hearing." Neither Zenith's motion to continue the expedited hearing nor an order of the trial court denying Zenith's motion is included in the record on appeal. Zenith's October 15 motion to continue the summary judgment hearing asserted that it issued several subpoenas for depositions that "were set to occur on September 23 and 24, 2021," that the trial court held a status conference on September 21, that in the status conference Zenith "reinstituted its Motion to Continue the Expedited hearing set for September 28, 2021," and that the trial court again denied Zenith's motion to continue the expedited hearing.

The first order of the trial court included in the record is the court's September 23 order cancelling the September 28 expedited hearing. The order notes that the court convened a September 21 "pretrial teleconference" but does not address Zenith's purported motion to continue the expedited hearing, and it does not indicate Zenith "reinstituted" its motion to continue the expedited hearing in the pretrial teleconference. Instead, as noted above, the trial court cancelled the September 28 expedited hearing at Employee's request, stating counsel for Employee "intends to proceed with a compensation hearing when [Employee] reaches maximum medical improvement." According to Zenith's October 15 motion to continue the summary judgment hearing, on the day following the September 21 pretrial conference, "Employee's counsel withdrew the Request for Expedited Hearing," and Love Management withdrew its motion to quash subpoenas for the September 23 and 24 depositions "with the understanding that [Love Management] would agree to future mutually agreeable deposition dates." According to Zenith's motion to continue the summary judgment hearing, it proceeded to take several discovery depositions, and counsel for Love Management was "in agreement to provide [its] clients for depositions." Further, Zenith represented in its October 15 motion that deposition dates were circulated but Employee's counsel "was not agreeable to any of the provided dates."

Employee objected to Zenith's motion to continue the summary judgment hearing and asserted Zenith was attempting to "mislead the Court, and otherwise obfuscate repeatedly in the latest attempt to avoid any sort of adjudication of [Employee's] claim." Employee's response asserted that Employee requested the court to set an October 25 hearing on her motion for summary judgment and that Zenith confirmed its agreement to an October 25 hearing, only to request a continuance nine days later. Employee asserted Zenith failed to comply with Rule 57.06 of the Tennessee Rules of Civil Procedure by failing to submit an affidavit explaining why it was not able to obtain and present evidentiary material to oppose Employee's summary judgment motion. Employee contended the trial court need not get into the merits of Zenith's motion to continue the summary judgment hearing because of its failure to comply with Rule 56.07.

On October 19, Zenith filed its response to Employee's motion for partial summary judgment and its response to Employee's statement of undisputed facts. Zenith disputed three of the ten statements but agreed to seven of the statements "based on discovery performed to date." In its response to Employee's motion, Zenith requested the court "refrain from issuing an Order on the Partial Summary Judgment until additional necessary discovery has been completed." Zenith noted its earlier motion to continue the summary judgment hearing, reiterating that it needed "additional time to further investigate the claim issues" and to depose several individuals. Citing Tenn. Comp. R. and Regs. 0800-02-21-.18(1)(c), which addresses responses to dispositive motions and authorizes a trial judge to grant additional time for the non-moving party "to respond, obtain affidavits, engage in discovery, or take depositions," Zenith asserted Employee's claim "was not ripe" for summary judgment.

5

In its response to Employee's motion for summary judgment, Zenith objected to the exhibits Employee submitted with her motion for partial summary judgment, asserting "Employee has simply supplied print offs from the Texas Secretary of State office and an insurance policy" that are not included in the items specified in Rule 56.04 that a trial court can consider. Zenith referenced and set out excerpts from the depositions of Employee and Mr. Love that it contended evidenced material factual issues as to what entity was paying Employee's wages for her work on the date of the accident and what entity employed Employee at the time of the accident.

On Friday October 22, the trial court issued an order denying Zenith's motion to continue the October 25 hearing "[b]ecause Zenith did not present an affidavit to support its reasons for requesting the continuance and agreed to the October 25 hearing date." On the same date as the court issued its order, Zenith refiled its motion to continue the summary judgment hearing along with a lengthy affidavit of its attorney setting out the chronology of the claim and requesting "additional time to further investigate the employee/employer and 'course and scope' issues," and to depose several individuals identified in its motion.

The trial court's November 12 order granting Employee partial summary judgment addressed Zenith's motion to continue the summary judgment hearing, noting that the court had initially denied Zenith's motion "because it failed to include an affidavit supporting its motion as required by Tennessee Rules of Civil Procedure 56.07." Addressing Zenith's October 22 motion that was accompanied by counsel's affidavit, the court "again denie[d] the motion due to its late filing," adding that "[f]urther, as noted in the order denying Zenith's original motion for a continuance, Zenith agreed to the hearing date before the Court placed it on its docket."

Turning to the merits of Employee's motion for partial summary judgment, the court stated in its order that Employee, as the moving party, "must do one of two things to prevail on her motion: (1) submit affirmative evidence that negates an essential element of Zenith's defense, or (2) demonstrate that Zenith's evidence is insufficient to establish an essential element of its defense." According to the trial court's order, if Employee does either or both, "Zenith must respond by producing specific facts showing a genuine issue for trial." Concluding the undisputed facts "show [Employee] worked as marketing manager for Love Management on the date of her injury" and "further show that she came to Nashville to work in that capacity by attending a planning meeting for Music City Eats, an event that benefited Love Management by expanding its brand," the trial court granted Employee's motion for partial summary judgment. The order did not award Employee benefits or address any obligations of Zenith resulting from its grant of a partial summary judgment. Zenith has appealed.

6

**Standard of Review**

We review a trial court's decision to deny a request for a continuance under Rule 56.07 on an abuse of discretion standard. *See Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009). A trial court abuses its discretion "when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). In doing so, we are required to "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Shaw v. Metro. Gov't of Nashville & Davidson Cty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019). Moreover, we resolve any doubts about the existence of a genuine issue of material fact in favor of the nonmoving party. *See TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879 (Tenn. 2019). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

**Analysis**

Zenith presents two issues for our review: (1) whether the trial court erred in denying its motion to continue the hearing on Employee's motion for partial summary judgment; and (2) whether the trial court erred in granting Employee's motion for partial summary judgment. In addition, Employee raises an issue questioning whether Zenith should be sanctioned for filing what she describes as a frivolous appeal. Our decision addressing the issues raised by Zenith pretermits any need to address whether Zenith's appeal is frivolous.

*Motion to Continue*

Initially, we note that Employee contends Zenith failed to timely appeal the trial court's October 22, 2021 order denying Zenith's motion to continue the summary judgment hearing. Indeed, Zenith's notice of appeal was filed on November 19, 2021, substantially more than the seven business days allowed for a party to file a notice appealing an interlocutory order. *See* Tenn. Code Ann. § 50-6-217(a)(2)(A) (2021). However, Zenith filed a second motion to continue the summary judgment hearing on October 22, which the trial court denied in its November 12, 2021 order, thereby resulting in Zenith's November

7

19, 2021 notice of appeal timely raising the issue of the correctness of the court's denial of Zenith's motion to continue the summary judgment hearing.

Rule 56.07 "is intended to serve as an additional safeguard against an improvident or premature grant of summary judgment." *Kenyon v. Handal*, 122 S.W.3d 743, 753 n.7 (Tenn. Ct. App. 2003). In its October 22, 2021 order denying Zenith's motion to continue, the trial court offered two reasons for denying Zenith's motion: (1) Zenith failed to file an affidavit in support of its request for more time; and (2) Zenith's counsel agreed to the date for the hearing. In its November 12, 2021 order granting Employee's motion for partial summary judgment, the court noted its earlier order denying Zenith's motion for a continuance "because it failed to include an affidavit supporting its motion as required by Tennessee Rule of Civil Procedure 56.07." Stating that Zenith refiled its motion that same day "but included an affidavit," the court again denied Zenith's motion "due to its late filing." In addition, the court again stated that Zenith "agreed to the hearing date."

Tennessee appellate courts have stated that motions under Rule 56.07 must be accompanied by an affidavit explaining why the nonmoving party has not been able to oppose a summary judgment motion. *See, e.g.*, *Kenyon*, 122 S.W.3d at 753 n.7. However, the affidavit need not contain evidentiary facts going to the substantive merits of the case. *Id.* Here, Zenith filed its motion requesting additional time for discovery on October 15, ten days before the scheduled hearing date, albeit without an affidavit of counsel. Upon learning of the court's denial of its motion for failing to file an affidavit, counsel for Zenith filed an affidavit three days before the summary judgment hearing. Rule 56.04 provides that an adverse party "may serve and file *opposing* affidavits not later than five days before the hearing," but there is no similar time limitation for Rule 56.07 affidavits explaining why the nonmoving party cannot "present by affidavit facts essential to justify the opposition." Moreover, Tenn. Comp. R. and Regs. 0800-02-21-.18(1) allows "[a]ny party to file a dispositive motion in accordance with the Tennessee Rules of Civil Procedure," and subsection -.18(1)(c) allows a trial judge to "grant additional, reasonable time for the non-moving party to respond, obtain affidavits, engage in discovery, or take depositions" without any requirement that an affidavit be filed stating the reasons the additional time is being requested. We need not decide whether the alternate procedure in this regulation that was adopted by the administrator conflicts with Rule 56.07, as we conclude Zenith complied with Rule 56.07 by filing an appropriate affidavit with its October 22 motion requesting the court to continue the summary judgment hearing.

Furthermore, we consider several factors that we conclude to be pertinent to the decision whether to continue the summary judgment hearing: (1) the length of time Employee's July 9, 2021 petition had been pending; (2) her counsel's request to cancel the September 2021 expedited hearing and his representation to the trial court that he intended to proceed with a compensation hearing when Employee reached maximum medical improvement; (3) the reasons advanced by Zenith in support of its request for additional time; (4) Zenith's diligence in seeking a continuance; and (5) the possible prejudice to

Zenith if the continuance was not granted. Based on these considerations, we conclude the trial judge, in denying Zenith's motion to continue the summary judgment hearing, applied an incorrect legal standard in determining whether Zenith complied with Rule 56.07 and reached an unreasonable decision resulting in an injustice to Zenith.

*Grant of Partial Summary Judgment*

The trial court stated in its order granting Employee partial summary judgment that Employee, as the moving party, "must do one of two things to prevail on her motion: (1) submit affirmative evidence that negates an essential element of Zenith's defense, or (2) demonstrate that Zenith's evidence is insufficient to establish an essential element of its defense." According to the trial court's order, if Employee does either or both, "Zenith must respond by producing specific facts showing a genuine issue for trial." We have determined the trial court based its decision to grant Employee partial summary judgment on an incorrect legal standard, and we take this opportunity to clarify that standard as established by the Tennessee Supreme Court.

In *Rye*, the Tennessee Supreme Court clarified the burden shifting analysis a court is to perform when deciding whether to grant or deny a motion for summary judgment filed by a party *who does not bear the burden of production at trial*. In such cases, the moving party may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Id.* at 264.

However, the Court in *Rye* did not specifically address the burden of production where, as in this case, the moving party has the burden of proof at trial. In a dissenting opinion in *Celotex Corp. v. Catlett*, 477 U.S. 317 (U.S. 1986) (Brennan, J., dissenting), Justice Brennan explained the differing burdens on parties seeking summary judgment depending on whether the moving party has the ultimate burden of production at trial. Justice Brennan offered the following where the party moving for summary judgment will have the burden of persuasion at trial:

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence – using any of the materials specified in Rule 56(c) [of the Federal Rules of Civil Procedure] – *that would entitle it to a directed verdict if not controverted at trial*. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.

*Id.* at 331(citations omitted) (second emphasis added).

9

In a more recent case involving a motion for summary judgment filed by the plaintiff, the Tennessee Supreme Court noted that *Rye* did not specifically address the burden of production in such a motion when the moving party has the burden of proof at trial. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019). The Court cited with approval part of Justice Brennan's dissent in *Celotex* in which he explained that "if the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial would entitle it to a directed verdict." *Id.* Further addressing the burden shifting framework, the Court in *TWB Architects* explained:

> By stating its holding in terms of the burden shifting framework applicable when the nonmoving party does not bear the burden of proof at trial, the Court in *Rye* did not intend to change this burden shifting framework described by Justice Brennan . . . . The emphasis under the *Rye* standard is the evidence *at the summary judgment stage*. Whether the nonmoving party is a plaintiff or a defendant – and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense – at the summary judgment stage, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." This is the standard Tennessee courts must apply when ruling on summary judgment motions regardless of which party bears the burden of proof at trial.

*Id.* at 888-889 (internal citation omitted). Hence, we conclude the trial court misstated the applicable summary judgment standard under the circumstances and relied on that incorrect standard in reaching its determination.

Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate numbered paragraph and supported by a specific citation to the record." *Id.* Here, Employee set forth ten separate statements of facts alleged to be undisputed. The first three of those facts were not material in determining whether Employee's injuries occurred in the course of her employment with Love Management. We address the pertinent statements below, numbered 4 through 10:

4. On February 24, 2019, [Employee] was the Marketing Director of [Love Management]. (Tim Love Dep. 12:23-13:17).

5. Prior to January 2019, [Employee] was paid for her work as the Marketing Director of [Love Management] through River Shack, LLC because [Love Management] did not have enough money to pay a marketing director and

10

River Shack, LLC had the most profit of the Love business entities. (Tim Love Dep. 13:7-17, 14:2-7).

6. Despite her W-2 pay prior to January 2019 coming from River Shack, LLC, [Employee] was not the marketing director for River Shack. (Tim Love Dep. 15:1-4).

Zenith agreed to these three statements "based on discovery performed to date." However, the deposition testimony Employee referenced as being in Mr. Love's deposition is not included in the record.

7. At all times, [Employee] was the Vice President and Director of [Love Management]. (Exhibit _ to Employee's Motion for Partial Summary Judgment).

Zenith disputed this statement, adding that it "cannot properly respond, as the Exhibit referred to is not specified."

8. [Employee] was in Nashville in February 2019 on the business of [Love Management] and not any other Love company such as White Elephant or Lonesome Dove. (Tim Love Dep. 59:11-25).

Zenith agreed to this statement "based on discovery performed to date." The deposition testimony Employee referenced at page 59 of Mr. Love's deposition is not included in the record.

9. If [Employee] had not been injured, but instead attended the T.J. Martell Foundation event, she would have been working for [Love Management] at the event, marketing for the Love Brand. (Tim Love Dep. 60:1-5, [Employee] Dep. 66:11-67:20).

Zenith also agreed to this statement "based on discovery performed to date." The deposition testimony included in Employee's motion, which Employee referenced to be on page 60 of Mr. Love's deposition, supports the asserted statement as does the deposition testimony Employee referenced to be on pages 66-67 of Employee's deposition.

10. The main purpose of [Employee's] travel to Tennessee in 2019 was the planning of the Music City Food and Wine Festival and the T.J. Martell Foundation charity event. ([Employee] Dep. 63:25-64:5).

Zenith disputed this statement, referencing testimony from Employee's deposition that Zenith set out in its response. The deposition testimony Employee referenced as appearing on pages 63-64 of Employee's deposition is not included in the record.

11

In addition to Employee's separate statements of undisputed facts, her motion for partial summary judgment included several references to her deposition testimony by page and line number, but, like most of the statements included in Employee's statement of undisputed facts, the referenced deposition testimony in Employee's motion is not included in the record before us.

Zenith was required to respond to each fact by agreeing that it is undisputed, agreeing that it is undisputed only for purposes of ruling on the motion for partial summary judgment, or showing that the fact is disputed with a specific citation to the record. Tenn. R. Civ. P. 56.03. We deem Zenith's responses to the statements of undisputed facts that it agreed to "based on discovery performed to date" to admit the statements for purposes of the motion for partial summary judgment. However, in its response to Employee's motion, Zenith contended there were material factual issues concerning whether Employee was an employee of Love Management or another company under the "Love Brand," or both, and it supported its contention with citations to specific portions of Employee's deposition testimony that were reproduced in Zenith's response. This deposition testimony indicated Employee did not know who her employer was, what company paid her wages, or how much she was paid.

Viewing the evidence in the light most favorable to Zenith, the nonmoving party, as we are required to do, and drawing all reasonable inferences in Zenith's favor as we are also required to do, we conclude that divergent inferences could reasonably be drawn from the limited record before us as to whether Employee's February 24, 2019 injuries occurred in the course and scope of her employment with Love Management and that the trial court should not have granted Employee's motion for partial summary judgment.

**Conclusion**

For the foregoing reasons, we hold that the trial court abused its discretion in denying Zenith's motion to continue the summary judgment hearing. Irrespective of this error, we further conclude the trial court erred in granting Employee's motion for partial summary judgment. Accordingly, we reverse the trial court's order granting Employee partial summary judgment and remand the case. Costs on appeal are taxed to Employee.



| | | |
|---|---|---|
| Emilie Love | ) | Docket No. 2020-06-0102 |
| | ) | |
| v. | ) | State File No. 24525-2019 |
| | ) | |
| Love Management, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard January 25, 2022 |
| Compensation Claims | ) | via Microsoft Teams |
| Joshua D. Baker, Judge | ) | |

---

**Concurrence**

---

Conner, J., concurring.

I fully concur with the result as set out in majority opinion. I write separately to reiterate the difficulties that often arise when parties seek to bifurcate the issue of compensability prior to the occurrence of the final compensation hearing.

To illustrate this problem, consider a trial court's order that purports only to resolve the issue of compensability, as in this case. Such an order may or may not be "final" for purposes of further appeal. *See* Tenn. R. Civ. P. 54.02.[1] In other words, the issuance of an order addressing only compensability that is declared by the trial court to be a "final judgment" could theoretically be appealed, which would delay the case for months while that appeal is resolved. If the trial court does not "direct the entry of a final judgment" as indicated in Rule 54.02, then the trial court's order is interlocutory in nature and "is subject to revision at any time prior to the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." *Id.* In effect, such an order has resolved nothing because the interlocutory nature of the order makes it subject to revision at any time prior to the issuance of the final compensation order. Because the order is interlocutory, nothing prevents the party who lost at the bifurcated hearing from seeking additional discovery on the very issue the parties sought to resolve at the bifurcated hearing.

In *Cotton v. HUMACare, Inc.*, No. 2015-02-0061, 2016 TN Wrk. Comp. App. Bd. LEXIS 42 (Tenn. Workers' Comp. App. Bd. Sept. 14, 2016), then-Presiding Judge

---

[1] We engaged in an extensive analysis of this issue in *Foriest v. United Parcel Service*, No. 2017-06-0413, 2018 TN Wrk. Comp. App. Bd. LEXIS 39, at *9-12 (Tenn. Workers' Comp. App. Bd. Aug. 10, 2018). For purposes of this discussion, I will presume Rule 54.02 could apply.

Davidson expressed his concerns with the practice of bifurcating the issue of compensability in workers' compensation cases:

> While it may serve the interests of efficiency and justice to resolve some cases issue by issue in separate bifurcated trials conducted over time, an expeditious resolution in workers' compensation cases provides employees and businesses alike much needed finality and the ability to move on. This is not to suggest, of course, that speed for the sake of speed should be the goal. Clearly, it is not. Instead, as directed by the legislature, workers' compensation disputes should be resolved in a "fair, equitable, expeditious, and efficient" manner. Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2016). In my view, moving a case toward a resolution one inch at a time through a series of bifurcated trials is generally inconsistent with these objectives and should be avoided unless a sound reason suggests otherwise given the peculiar circumstances of a given case.

*Id.* at *15-16 (Davidson, J., concurring).

Moreover, in *Foriest*, *see* footnote 1, the trial court issued a bifurcated order and included language that stated, "this is not a final order addressing all contested issues in this claim." *Foriest*, 2018 TN Wrk. Comp. App. Bd. LEXIS 39, at *5. On appeal, we first noted that because the trial court stated its bifurcated compensation order was *not* a final order, it must be treated as an interlocutory order, which changed the appeals procedure and our standard of review. We then concluded the issue was not ripe for an appeal:

> Here, the issue of compensability was not ripe for adjudication at an interlocutory stage of the case. Ultimately, whether an injured worker is entitled to benefits depends on a variety of factors including, but not limited to, medical evidence . . . . As we have observed in a different context, "[g]iven the twists and turns inherent in litigation, it seems the better practice is to resolve such issues [when] . . . the parties and the court no longer face uncertainties over future developments, as opposed to adjudicating disputes . . . in piecemeal fashion as the case winds its way through the litigation process."

*Id.* at *7 (internal quotations and citations omitted). We then addressed the broader implications of bifurcating the issue of compensability in a workers' compensation case:

> Tennessee courts have cautioned against the use of bifurcated trials as a way of resolving disputes, including workers' compensation disputes. Indeed, our Supreme Court's Special Workers' Compensation Appeals Panel has observed that bifurcated trials serve little purpose in workers' compensation cases. Other courts have observed that the interests of justice will warrant a

2

bifurcation of the issues in only the most exceptional cases and upon a strong showing of necessity.

. . . .

There are several other considerations that highlight the problematic nature of bifurcated trials, particularly in the context of the Reform Act of 2013. First, neither the workers' compensation statutes nor the regulations contemplate that a bifurcated trial will occur in a workers' compensation case. Instead, the current statutes and regulations provide other mechanisms for a trial court to address interlocutory disputes regarding the initiation of medical and temporary disability benefits, namely, expedited hearings and motions. A trial court has the authority to order the initiation of benefits or deny the claim using either of these mechanisms. There is no indication that the legislature, in passing the Reform Act of 2013, contemplated bifurcated trials as a means of resolving workers' compensation cases in light of the specific framework it put in place in anticipation of interlocutory disputes, such as the one involved here.

Second, there is nothing in the statutes or regulations to restrict a trial court from hearing additional evidence or changing its mind on the issues raised and decided in a bifurcated trial, as such orders do not become final by operation of law. In other words, nothing prevents a party who lost at a bifurcated trial from seeking additional evidence and presenting it at a subsequent trial . . . .

Third, even if we were to affirm the trial court's bifurcated compensation order, it is unclear where that leaves the parties. Arguably, Employer could not appeal our decision to the Tennessee Supreme Court because such an appeal does not fall within the ambit of an appeal as of right as defined in Rule 3(a) of the Tennessee Rules of Appellate Procedure. Moreover, if the bifurcated compensation order cannot be certified as final, it arguably does not become enforceable pursuant to Tennessee Code Annotated section 50-6-239(c)(9).

*Id.* at \*8-12 (internal quotations and citations omitted). In the present case, the trial court's order for partial summary judgment did not address Employee's entitlement to any temporary disability or medical benefits. It was essentially a non-binding advisory opinion regarding the issue of compensability. In short, I conclude the trial court erred in using the summary judgment process to, in effect, issue a bifurcated compensation order that was interlocutory in nature and that resolved nothing for the parties.

3



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Emilie Love | ) | Docket No. 2020-06-0102 |
| | ) | |
| v. | ) | State File No. 24525-2019 |
| | ) | |
| Love Management, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard January 25, 2022 |
| Compensation Claims | ) | via Microsoft Teams |
| Joshua D. Baker, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 23rd day of February, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Connor R. Sestak | | | | X | csestak@moganakins.com<br>nparivar@morganakins.com |
| Steven Fifield | | | | X | steven@rocklyawfirm.com<br>connie@rockylawfirm.com |
| Allen Grant<br>Ryan Mirian | | | | X | agrant@eraclides.com<br>rmirian@eraclides.com |
| Joshua D. Baker, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Q. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov